UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RAMÓN ÍSÍDRO MEJÍA,                          :
                                             :
                              Plaintiff,     :
            -against-                        :          1:16-cv-9706-GHW
                                             :
MISS DAVIS; JOHN DOE MALE ESCORT;            :          MEMORANDUM OPINION
JOHN DOE POLICE OFFICERS # 1-12; NEW         :              AND ORDER
YORK PRESBYTERIAN – COLUMBIA                 :
UNIVERSITY MEDICAL CENTER; NEW               :
YORK CITY; DETECTIVE DOMINICK                :
MCDONAGH; POLICE OFFICER MADELINE            :
CRUZ; POLICE OFFICER MILDRED                 :
RODRIGUEZ; SERGEANT MICHAEL                  :
HENNELLY; DETECTIVE DERRICK                  :
MOYER; JOHN DOE EMERGENCY                    :
MEDICAL TECHNICIAN # 1 AND 2; NORTH          :
CENTRAL BRONX HOSPITAL, NEW YORK             :
CITY HEALTH AND HOSPITALS                    :
CORPORATION; JOHN DOE DOCTOR # 1;            :
MARK A. SCHEAR, MD; JOHN DOE NURSES          :
# 1-5; JOHN DOE ORDERLY #1,                  :
                                             :
                              Defendants.    :
------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

On September 10, 2015, the New York and Presbyterian Hospital s/h/a the New York

Presbyterian – Columbia University Medical Center ("NYPH") sent a Mobile Crisis Team to

Plaintiff Ramon Mejia's apartment in the Bronx. The Mobile Crisis Team entered Plaintiff's home

with Plaintiff's consent, investigated, left, and then called the New York City Police Department to

have Plaintiff removed from his home. After an hour-long encounter with police officers at his

apartment, Plaintiff was forcibly taken from his apartment and transported to the North Central

Bronx Hospital, where he was involuntarily interned for six days. Plaintiff filed this matter *pro se*,

bringing claims against the NYPH and various other defendants for violations of his constitutional

rights under 42 U.S.C. § 1983 ("Section 1983") and alleging state law claims that include false arrest,

slander, negligence, and medical malpractice. The NYPH has moved to dismiss Plaintiff's claims

against it. Because the NYPH is not a "person" under Section 1983, Plaintiff's Section 1983 claims

against the NYPH are dismissed. Plaintiff's state law claims against the NYPH are also dismissed.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiff is a sixty-five-year-old disabled man of Latino and Caribbean descent. Third

Amended Complaint (ECF No. 66) ("TAC") ¶ 1, 28.[2] Members of the New York City Police

Department ("NYPD") called the NYPH and "ordered" that a Mobile Crisis Team be sent to

evaluate Plaintiff at his home "because they were frustrated with complaints that Plaintiff had made

to them." Pl.'s Opposition to Mot. to Dismiss (ECF No. 73) ("Pl.'s Opp.") at 2. On or about

September 10, 2015, at approximately 9:30 a.m., a Mobile Crisis Team consisting of Ms. Davis and

an unidentified male escort (John Doe Male Escort) came to Plaintiff's apartment in the Bronx.

TAC ¶ 3-4; Pl's Opp. at 2. Ms. Davis identified herself as a social worker from Columbia

Presbyterian Hospital. TAC ¶ 4. Ms. Davis and her escort asked to inspect Plaintiff's apartment for

housing code violations, and Plaintiff invited them inside. *Id.* While inside the apartment, the crisis

team "investigat[ed] Plaintiff and his home," Pl.'s Opp. at 2, but Ms. Davis "was dismissive of

Plaintiff's housing problems," TAC ¶ 4. After Plaintiff instructed Ms. Davis and the male escort to

"leave and never come back," they left Plaintiff's apartment. TAC ¶ 4.

---

[1] Unless otherwise noted, the facts are taken from the third amended complaint or Plaintiff's opposition to Defendant's motion to dismiss, and are accepted as true for the purposes of this motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The third amended complaint is composed of a form complaint and several additional typewritten pages. The allegations set forth in the typewritten pages are organized in numbered paragraphs. The allegations set forth in the form complaint are not organized in numbered paragraphs. The Court therefore cites to page numbers when citing to the allegations in the form complaint and to paragraph numbers when citing to the additional typewritten pages. The page numbers cited to are those indicated on the ECF docket notation, not the page numbers included as footers on the form complaint.

Plaintiff alleges on information and belief that Ms. Davis and her male escort called the police. TAC ¶ 5. Plaintiff alleges that "[n]othing that they told the police would have justified the police coming to Plaintiff's apartment," that Plaintiff "had not engaged in any behavior to justify the police coming to the apartment," and, therefore, anything that Ms. Davis and her escort told the police "would have been false." *Id.* The police arrived approximately fifteen minutes later, and twelve unidentified officers (John Doe Police Officers Nos. 1 through 12) "began banging on Plaintiff's door demanding to talk to" him. TAC ¶ 6. The officers also "demanded that Plaintiff stand directly behind" the closed front door, which Plaintiff refused to do. *Id.*

At one point, Plaintiff heard a "loud noise," and "something was used on the outside of the door to blow the peephole" out. TAC ¶ 7. The peephole "ricocheted around the apartment," and an "open hole was left where the peephole object was previously." *Id.* Plaintiff observed "red dots on the wall opposite the door that appeared to be from a laser sight on a gun." TAC ¶ 8.

Plaintiff still refused to open the door for police, and "never consented" to the police's entry into his home. TAC ¶ 10. Plaintiff asserts that he "never threatened anyone," "never committed any visible crime while inside his apartment," and "never caused any disturbance of any kind inside his apartment." *Id.* Yet, the twelve police officers, led by Detective McDonagh, "caus[ed] a disturbance at Plaintiff's door" for approximately one hour, then broke the door down and entered dressed in full riot gear. TAC ¶ 11.

Once inside the apartment, one of the officers, "who was tall and large," placed Plaintiff in handcuffs and "pushed" him out the door. TAC ¶ 12. Plaintiff had an injured foot and struggled to go down the stairs. *Id.* While he was descending the steps, Plaintiff was "pushed very roughly" by Officers Madeline Cruz and Mildred Rodriguez. TAC ¶ 13. This caused Plaintiff to "stumble and lose balance." *Id.* Despite Plaintiff's request that Officers Cruz and Rodriguez "please stop pushing very roughly," the officers continued to push him down the six flights of stairs. *Id.* Plaintiff

sustained an injury to his right foot in the process. *Id.*

Police officers escorted Plaintiff to an ambulance outside, and two emergency medical technicians ("EMTs") transported Plaintiff to North Central Bronx Hospital. TAC ¶ 14. A uniformed police officer accompanied them to the hospital, and, at the hospital, "police were everywhere." *Id.*

Upon Plaintiff's arrival at the North Central Bronx Hospital, hospital staff asked Plaintiff for his name, address, and date of birth. TAC ¶ 17. Plaintiff provided the requested information, and his responses were recorded on a computer. *Id.* The staff asked Plaintiff nothing about his medical condition, whether he was injured, whether he had any allergies, or the reason for his presentment at the hospital. *Id.* Hospital staff instructed Plaintiff to remove any personal property from his pockets and person and logged those items on a written form. *Id.*

Plaintiff was then taken to the psychiatric unit located on the thirteenth floor. TAC ¶ 16-17. There, Plaintiff's handcuffs were removed, but he was told that he was not free to leave. TAC ¶ 16. Plaintiff observed that the hospital contained "many armed uniformed police officers," TAC ¶ 17, and the doors has "code systems," TAC ¶ 18. "[T]his was not a regular hospital." TAC ¶ 17.

Plaintiff was instructed to sit in a waiting area while his room was being prepared. *Id.* An unidentified doctor, John Doe Doctor No. 1, then ordered Plaintiff "forcibly hospitalized" without performing "an independent assessment." *Id.* Dr. Mark A. Schear ordered Plaintiff to be "forcibly" medicated without "an independent evaluation." TAC ¶ 21. Despite Plaintiff's objections, he was held down by John Doe Officer No. 14, John Doe Nurse No. 1, and other hospital staff and was given an injection of Risperdal by a nurse. *Id.*

Plaintiff remained in the hospital from September 10, 2015 to September 16, 2015. TAC ¶ 20. During his internment, Plaintiff was forced to take pills prescribed by Dr. Schear. John Doe Orderly No. 1 regularly told Plaintiff he had to take the pills, and John Doe Nurse No. 5 warned

Plaintiff that if he did not take the pills, the nurse would report that to her supervisor, who would then send nurses to "physically force Plaintiff to take the pills." TAC ¶ 23. Plaintiff was also subjected to mandatory blood draws. TAC ¶ 27. Plaintiff made numerous requests to be released from the hospital, but he was told that only the in-house psychologist or Dr. Schear could authorize his release. TAC ¶ 22. On September 16, 2015, Plaintiff was released into the care of his sisters. TAC ¶ 24.

Plaintiff alleges that as a result of these incidents, he sustained injuries to his right foot that still cause him pain, as well as back injuries. TAC at 5, ¶ 13. Plaintiff also alleges that he suffers from nightmares, for which he needs sleep disorder treatment, and paranoid anxiety at the sight of police officers in public areas. TAC at 5. Plaintiff seeks damages in the amount of $100,000,000. *Id.*

### B. Procedural History

Plaintiff initiated this action on December 15, 2016. ECF No. 2. Plaintiff was granted leave to proceed *in forma pauperis* on January 17, 2017. ECF No. 3.

On January 26, 2017, the Court *sua sponte* dismissed Plaintiff's claims against the Civil Court of the City of New York, Bronx County, the Health and Hospitals Corporation, its unidentified employees, Dr. Schear, Ari Benedict, Sergio Anagunbla, the New York City Police Department ("NYPD"), the 50th Precinct, and the "NYCEMS." ECF No. 5. The Court granted Plaintiff leave to replead his claims against the Health and Hospitals Corporation, its unidentified employees, Dr. Schear, Ari Benedict, and Sergio Anagunbla. *Id.* The Court also directed NYPH counsel and the Corporation Counsel of the City of New York to ascertain the identity of the unidentified individual defendants. *Id.*

On February 27, 2017, the NYPH filed an answer to the complaint. ECF No. 13. On March 15, 2017, Plaintiff filed a first amended complaint. ECF No. 17. On April 6, 2017, after

obtaining leave of court, Plaintiff filed a second amended complaint. ECF No. 27. On June 16, 2017, Defendants City of New York and Madeline Cruz filed an answer to the second amended complaint. ECF No. 51.

On June 30, 2017, the NYPH filed a motion to dismiss Plaintiff's second amended complaint. ECF No. 53. On July 19, 2017, the Court granted Plaintiff leave to file a third amended complaint for the purpose of naming individual defendants that the City of New York had identified pursuant to the Court's *Valentin* order. ECF No. 65. Plaintiff filed his third amended complaint on July 28, 2017. ECF No. 66. The Court granted the NYPH's request to deem its June 30, 2017 motion to dismiss to be a motion to dismiss the third amended complaint. ECF No. 70. On August 15, 2017, Plaintiff filed his opposition to the NYPH's motion to dismiss. ECF No. 73. On August 25, 2017, the NYPH filed its reply. ECF No. 74.

On September 8, 2017, Defendants New York City Health and Hospitals Corporation s/h/a North Central Bronx Hospital, New York City Health and Hospitals Corporation, and Dr. Schear moved to dismiss Plaintiff's third amended complaint. ECF No. 77. Plaintiff opposed that motion on October 5, 2017, and Defendants filed a reply on October 19, 2017. ECF Nos. 83, 88. Only the NYPH's motion is presently before the Court.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive

dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' A complaint must therefore contain more than 'naked assertion[s] devoid of further factual enhancement.' Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's allegations and "interpret[ ] [them] to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ."); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest claims it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). Nevertheless, "dismissal of a *pro se* complaint is [ ] appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## III.   DISCUSSION

### A.  Federal Claims against the NYPH

Plaintiff's third amended complaint can be construed as raising claims against the NYPH for violations of Plaintiff's constitutional rights under Section 1983.  The NYPH moves to dismiss Plaintiff's federal claims against it on the grounds that the hospital is not a "person" under Section 1983 and is not otherwise liable for the wrongful acts of its employees as pleaded in the third amended complaint.  The Court agrees, and Plaintiff's federal claims against the NYPH are dismissed.

#### 1.   Direct Liability

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, a Section 1983 action may only be maintained against a "person" who has deprived the plaintiff of constitutional rights.  *See id.*; *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 531 (S.D.N.Y. 2015).

It is well established that a hospital is not a "person" under Section 1983.  *See, e.g.*, *Schoolcraft*, 103 F. Supp. 3d at 531 ("[A] hospital is generally not a 'person' for the purposes of § 1983."); *Eng v. Bellevue Hosp.*, No. 14-cv-2516 (LAP), 2014 U.S. Dist. LEXIS 160887, at *12 (S.D.N.Y. Jul. 8, 2014) (dismissing claims against Bellevue Hospital "because a hospital is not a 'person'" under Section 1983); *Fabie v. Mailon*, No. 09-cv-8101 (BSJ), 2010 WL 4967839, at *1 (S.D.N.Y. Nov. 30, 2010) (concluding that Lincoln Medical Center was "not a 'person' and therefore [did] not have the capacity to be sued under § 1983"); *Kearse v. Lincoln Hosp.*, No. 07-cv-4730 (PAC) (JCF), 2009 WL 1706554, at *2 (S.D.N.Y.

June 17, 2009) (finding no clear error in report and recommendation dismissing claims against defendant hospital because the hospital was "not a 'person' and therefore [was] not amenable to suit under 42 U.S.C. § 1983"); *Williams v. City of New York*, No. 03-cv-5342 (RWS), 2005 WL 901405, at *1 (S.D.N.Y. Apr. 19, 2005) (noting that claims against hospital defendant were dismissed because "[a] hospital, clinic and facility . . . are not 'person[s]' within the meaning of § 1983" (alteration and omission in original)). Therefore, Plaintiff's Section 1983 claims cannot be maintained against the NYPH insofar as those claims allege that the NYPH's own conduct violated Plaintiff's constitutional rights, and any such claims are dismissed with prejudice.

### 2. *Monell* Claim

Plaintiff argues that the individual NYPH defendants, Ms. Davis and her escort, are state actors subject to Section 1983 liability because the actions that they took with respect to Plaintiff were undertaken jointly with the NYPD. Construed liberally, Plaintiff's opposition contends that the NYPH is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the constitutional violations committed by its employees.

"A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is . . . required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citing *Rendell-Bake v. Kohn*, 457 U.S. 830, 838 (1982)). "Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Rendell-Baker*, 457 U.S. at 847). "[T]he actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has

been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

The parties agree that the NYPH is a private entity, but dispute whether the hospital employees were acting as state actors during the events alleged in the third amended complaint. Assuming for purposes of this motion that the NYPH employees could be deemed state actors, Plaintiff's vicarious liability claims against the NYPH do not survive. "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (alteration in original) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *see Monell*, 436 U.S. at 690-91. Accordingly, "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986), but rather "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury," *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks and citation omitted).

A plaintiff may satisfy the "policy or custom" prong in one of four ways: by proving the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur*, 475 U.S. at 483-84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

As just noted, any claim for *respondeat superior* liability is not viable under Section 1983. Thus, Plaintiff may state a Section 1983 claim against the NYPH only under a theory of municipal liability under *Monell*. That is, Plaintiff's claim for municipal liability against the hospital would survive dismissal if the third amended complaint plausibly suggested a NYPH policy or custom that led to the alleged constitutional violations. But the third amended complaint fails to do this. In fact, it alleges no facts to suggest that the NYPH has a custom or policy that infringes on individuals' constitutional rights. Plaintiff pleads that Ms. Davis and her escort were employed by the NYPH as a Mobile Crisis Team, were sent to investigate Plaintiff, conducted some form of investigation inside Plaintiff's apartment, left when Plaintiff asked them to leave, and called the police to have Plaintiff taken into custody. Plaintiff asserts nothing that would suggest that Ms. Davis and her escort, or any other NYPH employee, committed unconstitutional acts against other individuals, and much less that such acts were "persistent or widespread." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) ("It is sufficient to show, for example, that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law.'" (quoting *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992))).

The third amended complaint is also devoid of any allegations suggesting that either Ms. Davis or her escort was a final policymaker for the NYPH. Allegations that Ms. Davis called the police and asked them to take Plaintiff into custody are insufficient to suggest that Ms. Davis is a final decision maker under *Monell*. Plaintiff's opposition alleges that Ms. Davis was a member of a Mobile Crisis Team acting in accordance with the provisions of New York's Mental Hygiene Law. The Mental Hygiene Law provides that "physician or qualified mental health professional who is a member of an approved mobile crisis outreach team shall have the power to remove, or . . . to direct the removal of any person to a hospital approved by the commissioner" provided that certain conditions are met. N.Y. Mental Hygiene Law § 9.58(a). Thus, Plaintiff's allegations suggest

nothing more than that Ms. Davis was performing her job—not that she had final authority to make policy decisions for the hospital. Any discretion that Ms. Davis exercised in contacting the police is by itself insufficient to plausibly plead that Ms. Davis was a final policymaker for the NYPH. *See Pembaur*, 475 U.S. at 481-82 ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of the discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." (citation omitted)); *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) ("[M]ere authority to implement pre-existing rules is not the authority to set policy."); *see also Allen v. City of New York*, No. 03-cv-2829 (KMW) (GWG), 2007 WL 24796, at *20 (S.D.N.Y. Jan. 3, 2007) ("That a city official has full responsibility for the operation of a particular function within a municipality does not mean that he is the final policymaker for that area.").

Accordingly, any *Monell* claim asserted by Plaintiff against the NYPH is dismissed without prejudice.

### B. State Law Claims

In addition to claims under Section 1983, Plaintiff's third amended complaint can be construed to raise various state law claims. Indeed, Plaintiff asserts in his opposition that the NYPH is responsible under the state law doctrine of *respondeat superior* for false arrest, slander, negligence, and medical malpractice. Pl.'s Opp. at 3-4. Plaintiff contends that he adequately pleads the tort claims under New York law with respect to Ms. David and John Doe Male Escort, and that the conduct by those individual defendants occurred within the scope of their employment so as to render the hospital liable. Pl.'s Opp. at 4.

#### 1. Jurisdiction over the State Law Claims

Before addressing the merits of Plaintiff's state law claims, the Court must first determine

whether it has jurisdiction over those claims. "Subject matter jurisdiction is a threshold inquiry a Court must answer before addressing the merits of a claim." *Blumatte v. Quinn*, 521 F. Supp. 2d 308, 310 (S.D.N.Y. 2007) (citing *Gutierrez v. Fox*, 141 F.3d 425, 426 (2d Cir. 1998)).

The third amended complaint states that Plaintiff resides at 3025 Goodwin Terrace in the Bronx, and resided there at the time of the alleged incidents. The third amended complaint does not identify the NYPH's principal place of business, its corporate form, or any other information pertinent to the hospital's citizenship for jurisdiction purposes. Nonetheless, the third amended complaint states that the NYPH is located at 622 West 168th Street, New York, New York. Therefore, it appears from the face of the pleadings that Plaintiff and the NYPH were both citizens of New York at all relevant times. Because the parties are non-diverse, Plaintiff's state law claims are before the Court as a matter of supplemental jurisdiction. *See* 28 U.S.C. § 1332(a)(1) (providing for original diversity jurisdiction over civil cases where the amount in controversy exceeds $75,000 if the case is between citizens of different states); 28 U.S.C. § 1367(a) (federal district courts have supplemental jurisdiction over state law claims "that are so related to" federal claims "that they form part of the same case or controversy"). Supplemental jurisdiction is "discretionary," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c).

Although the Court has dismissed all of Plaintiff's federal claims against the NYPH, federal claims under Section 1983 still exist against other defendants to this action. The Second Circuit has made clear that a district court may not decline to exercise jurisdiction over state law claims where federal claims remain against other defendants and the state law claims "form part of the same case or controversy." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004); *see* 28 U.S.C. § 1367(a). The state law claims

raised against the NYPH defendants are based on the same factual allegations that underpin the

remaining Section 1983 claims such that they "derive from a common nucleus of operative fact" and

are thus part of the "same case or controversy." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d

328, 335 (2d Cir. 2006). The claims against the individual NYPD members necessarily bring the

facts related to the mobile crisis team's investigation and contact with the police before the Court.

*See id.* ("In determining whether two disputes arise from a common nucleus of operative fact, we

have traditionally asked whether the facts underlying the federal and state claims substantially

overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before

the court." (alteration and omission in original) (internal quotation marks and citation omitted)).

Thus, at this stage of the case, the Court must exercise supplemental jurisdiction over these state law

claims.

### 2. False Arrest and Slander

The NYPH argues that Plaintiff's claims for false arrest and slander are time-barred. The

Court agrees. Under New York law, the statute of limitations for intentional torts, including false

arrest and slander, is one year. N.Y. C.P.L.R. § 215(3); *Mitchell v. Home*, 377 F. Supp. 2d 361, 377

(S.D.N.Y. 2005). "The accrual of pendant state law tort claims, such as false arrest, in federal court

actions is governed by state law." *Mitchell*, 377 F. Supp. 2d at 377; *Walker v. Armco Steel Corp.,* 446

U.S. 740, 750-51 (1980); *Piesco v. City of New York,* 650 F. Supp. 896, 899–900 (S.D.N.Y.1987)

(following *Walker*).

In New York, a state claim for false arrest accrues when a plaintiff is released from custody.

*See Newton v. City of New York*, 566 F. Supp. 2d 256, 278 n.145 (S.D.N.Y. 2008) ("Under New York

law, the statute of limitations on a claim for false arrest is one year and the claim accrues when the

party is released from prison." (quoting *Pinaud v. County of Suffolk*, 798 F. Supp. 913, 923 (E.D.N.Y.

1992))); *Palmer v. City of New York*, 640 N.Y.S.2d 92, 92 (1st Dep't 1996) (finding petitioner's claims

for false arrest and false imprisonment accrued when petitioner was released from custody); *Karen v. State*, 444 N.Y.S.2d 381, 384 (Ct. Cl. 1981) (observing that false arrest is a "continuing" tort that "technically first accrues at the initial moment of restraint" but "becomes complete at the end of the restraint, such as on release from custody").

Here, Plaintiff alleges that he was released from the custody of the North Central Bronx Hospital on September 16, 2015. TAC ¶ 24. Therefore, Plaintiff's false arrest claim accrued on that date. Yet, Plaintiff did not initiate this action until December 15, 2016, more than one year after his false arrest claim accrued. Therefore, Plaintiff's false arrest claim under New York law is dismissed with prejudice as time-barred.

A claim for slander accrues at "the time the slanderous statement is made, not when it is discovered." *Smith v. Soros*, No. 02-cv-4229 (JGK), 2003 WL 22097990, at *7 (S.D.N.Y. Sept. 5, 2003) (citing *Karam v. First Am. Bank of N.Y.*, 593 N.Y.S.2d 640, 642 (4th Dep't 1993)). Here, Plaintiff's allegations related to Ms. Davis and her male escort are confined to the events that unfolded on September 10, 2015. Therefore, any claim for slander under New York law against the NYPH defendants that could be gleaned from Plaintiff's third amended complaint would have accrued on September 10, 2015, more than one year prior to the filing of this matter. To the extent Plaintiff's slander claim is predicated on the events of September 10, 2015, that claim is also dismissed with prejudice as time-barred.

### 3. Negligence and Medical Malpractice

Plaintiff's opposition asserts a claim for "Negligence/Medical Malpractice" under New York law. Pl.'s Opp. at 4. While the NYPH does not separately address the medical malpractice claim, it argues that the negligence claim must be dismissed because Plaintiff fails to plead a duty or breach thereof.

Under New York law, "there is no prohibition against simultaneously pleading both an

15

ordinary negligence cause of action and one sounding in medical malpractice." *Ingutti v. Rochester Gen. Hosp.*, 44 N.Y.S.3d 274, 275 (4th Dep't 2016); *see Piccoli v. Panos,* 13 N.Y.S.3d 478, 479 (2d Dep't 2015); *Miller v. Albany Med. Ctr. Hosp.,* 464 N.Y.S.2d 297, 299 (3d Dep't 1983). "It is simply beyond cavil 'that an action for personal injuries may be maintained, in the proper case, on the dual theories of medical malpractice or simple negligence where a person is under the care and control of a medical practitioner or a medical facility.'" *Ingutti*, 44 N.Y.S.3d at 276 (quoting *Twitchell v. MacKay,* 434 N.Y.S.2d 516, 518 (4th Dep't 1980)). "Moreover, in a proper case, both theories may be presented to the jury." *Id.*

### a. Negligence

To state a claim for negligence under New York law, a plaintiff must allege: "(1) the existence of a duty on defendant's part as to plaintiff; (2) breach of this duty; and (3) injury to the plaintiff as a result thereof." *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012) (quoting *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367 (S.D.N.Y. 2008)); *see also Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000). "The existence of a duty is an essential element of a negligence claim because, '[i]n the absence of a duty, as a matter of law, no liability can ensue.'" *Pasternack*, 892 F. Supp. 2d at 552 (alteration in original) (citations omitted). Importantly, "[a] plaintiff must show more than a duty owed to a potentially limitless class of people, but rather a specific duty owed to the plaintiff." *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, No. 00-cv-4960 (LMM) (GWG), 2002 WL 31159106, at *3 (S.D.N.Y. Sept. 27, 2002).

"[I]t is for the courts first to determine whether any duty exists." *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (quoting *Darby v. Compagnie Nat'l Air France*, 96 N.Y.2d 343, 347 (2001)). "[T]he definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make." *Id.* (quoting *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994)).

Here, Plaintiff alleges in a conclusory manner that "each of [the negligence] elements have been adequately pled against Miss Davis and John Doe, Male Escort." Pl.'s Opp. at 4. The NYPH moves to dismiss any negligence claim against it and argues that Plaintiff's allegations "do not set forth any duty or breach thereof for which the Hospital could be held vicariously liable." Def.'s Reply Memorandum (ECF No. 74) ("Def.'s Reply") at 3. Even under a liberal reading of Plaintiff's submissions, the Court agrees with the hospital.

Plaintiff's allegations regarding Ms. Davis and the male escort suggest that the two defendants were members of a Mobile Crisis Team, dispatched by the NYPH to investigate Plaintiff's condition pursuant to New York Mental Hygiene Law § 9.58. Pl.'s Opp. at 2, 5-6. That law provides, in relevant part, that

> [a] physician or qualified mental health professional who is a member of an approved mobile crisis outreach team shall have the power to remove, or . . . to direct the removal of any person to a hospital . . . for the purpose of evaluation for admission if such person appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others.

N.Y. Mental Hygiene Law § 9.58(a).

Assuming, as the Court will for purposes of this motion, that Ms. Davis and her escort were acting as state actors in carrying out their duties under the Mental Hygiene Law, an affirmative duty to protect Plaintiff from harm from third parties is implicated. "[I]n certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Matican v. City of New York*, 524 F.3d 151, 156 (2d Cir. 2008) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989)). "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. Such a duty to protect against harm inflicted by third persons arises in the custodial relationship between a mental institution and an involuntarily committed patient. *Ying Jing*

*Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993); *see Youngberg v. Romeo*, 457 U.S. 307, 315-19 (1982) (holding that state mental institution has a duty under the Due Process Clause of the Fourteenth Amendment to protect involuntarily committed patients).

However, "the duty arises solely from 'the State's affirmative act of restraining the individual's freedom to act on his own behalf [ ] through incarceration, institutionalization, or other similar restraint of personal liberty.'" *Matican*, 524 F.3d at 156 (quoting *DeShaney*, 489 U.S. at 200)). That is, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Jacobs v. Ramirez*, 400 F.3d 105, 107 (2d Cir. 2005) (quoting *DeShaney*, 489 U.S. at 200)). This is because "[t]he basis of a special relationship is that the state has some sort of control or custody over the *individual*, as in the case of prisoners, involuntarily committed mentally ill persons, or foster children." *Citizens Accord, Inc. v. Town of Rochester*, No. 98-cv-0715 (TJM), 2000 WL 504132, at *18 (N.D.N.Y. Apr. 18, 2000) (quoting *Monfils v. Taylor*, 165 F.3d 511, 517 (7th Cir. 1998), *cert. denied*, 120 S. Ct. 43 (1999)), *aff'd sub nom. Citizens Accord, Inc. v. Town of Rochester, New York*, 29 Fed. App'x 767 (2d Cir. 2002).

Here, Plaintiff alleges that his freedom was not curtailed in any way until after Ms. Davis called the police and the police took Plaintiff into custody. While Ms. Davis and her escort were inside Plaintiff's apartment, they were there with Plaintiff's consent. Plaintiff alleges nothing to suggest that the mobile crisis team limited Plaintiff's physical liberty at any point during the team's interactions with him. Accordingly, any affirmative duty to protect Plaintiff arose only after Plaintiff was taken into custody. The third amended complaint suggests that at that point, Ms. Davis and her companion were no longer involved. Accordingly, Ms. Davis and John Doe Male Escort owed no affirmative duty to protect Plaintiff.

Even if an affirmative duty to protect arose during the course of Plaintiff's dealings with the

mobile crisis team, Plaintiff insufficiently alleges a breach of that duty. Assuming that Ms. Davis and her escort had a duty to protect Plaintiff from third parties, the third amended complaint, construed liberally, could be read to suggest that they breached that duty by lying to the police so that the police would take Plaintiff to the hospital for evaluation. The Court cannot find that calling the police to respond to a situation, even based on false statements, is a breach of the duty to protect. In fact, police officers are called upon to protect the public, and that is their legal obligation. *See Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017) (noting that police officers have "an obligation to ensure the safety of innocent bystanders" (quoting *United States v. Alexander*, 907 F.2d 269, 272 (2d Cir. 1990))); N.Y.C. Charter § 435 ("The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, . . . protect the rights of persons and property, . . . enforce and prevent the violation of all laws and ordinances in force in the city . . . ."). Indeed, the Mental Hygiene Law specifically authorizes a mobile crisis team to contact the police to direct the removal of an individual. Mental Hygiene Law § 9.58. Therefore, even if Ms. Davis and her escort owed a duty to protect Plaintiff from harm inflicted by third persons, Plaintiff has pleaded no facts that would plausibly suggest a breach of that duty. Accordingly, Plaintiff's negligence claim is dismissed without prejudice.

### b. Medical Malpractice

"When the duty [owed to the plaintiff] arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple negligence." *La Russo v. St. George's Univ. Sch. of Med.*, 936 F. Supp. 2d 288, 304 (S.D.N.Y. 2013) (citations omitted), *aff'd*, 747 F.3d 90 (2d Cir. 2014); *Sweeney v. Presbyterian/Columbia Presbyterian Med. Ctr.*, 763 F. Supp. 50, 52 (S.D.N.Y. 1991). Indeed, "to maintain an action to recover damages arising from medical malpractice, a doctor-patient relationship is necessary." *Heller v. Peekskill Cmty. Hosp.*, 603 N.Y.S.2d 548, 549 (2d Dep't 1993); *Lee*

*v. City of New York*, 560 N.Y.S.2d 700, 701 (2d Dep't 1990) ("Generally, recovery for a physician's malpractice is predicated upon the existence of a physician-patient relationship."); *see also Burtman v. Brown*, 945 N.Y.S.2d 673, 677 (1st Dep't 2012) (noting that "the dispositive factor in ascertaining" whether a physician owes a duty to a patient is "the extent to which the defendant advised, and the plaintiff relied on advice about" a medical condition).

Here, the third amended complaint is silent as to any medical treatment that was rendered by Ms. Davis or her escort. Plaintiff alleges that the team entered his apartment with his consent to inspect "for housing code violations," TAC ¶ 4, and because the NYPD was "frustrated with complaints that Plaintiff had made to them," Pl.'s Opp. at 2. Although Plaintiff alleges that Ms. Davis is a social worker for the NYPH, Plaintiff does not allege any facts that would suggest that Ms. Davis or her escort had a physician-patient relationship with Plaintiff, or that the mobile crisis team's interaction with Plaintiff was "substantially related to medical treatment." *La Russo*, 936 F. Supp. 2d at 304. Rather, the relationship between a mobile crisis team and the individual being taken into custody "bears little resemblance to the physician-patient relationship which is created 'when professional services are rendered and *accepted*' by the patient pursuant to an express or implied contract." *In re Marie H.*, 811 N.Y.S.2d 708, 711 (2d Dep't 2006) (quoting *Heller v. Peekskill Cmty. Hosp.*, 603 N.Y.S.2d 548 (2d Dep't 1993)). Plaintiff's allegations suggest that all of the medical treatment rendered to him was far from voluntary—professional medical services were not *accepted* by Plaintiff. Thus, the third amended complaint not only fails to suggest that the mobile crisis team had a physician-patient relationship with Plaintiff, it suggests that such a relationship is not plausible given the statuses of the parties. Plaintiff's medical malpractice claim against the NYPH defendants is accordingly dismissed with prejudice.

## IV.    CONCLUSION

For the reasons stated above, the NYPH's motion to dismiss is GRANTED in its entirety.

Plaintiff's Section 1983 claims against the NYPH based on a theory of direct liability are dismissed with prejudice.

Plaintiff's *Monell* claim against the NYPH is dismissed without prejudice.

Plaintiff's state law claims for false arrest, slander, and medical malpractice against the NYPH are dismissed with prejudice.

Plaintiff's state law negligence claim against the NYPH is dismissed without prejudice.

Plaintiff is granted leave to replead those claims that have been dismissed without prejudice. The Court will schedule a deadline for submission of a fourth amended complaint after the Court has decided the outstanding motion to dismiss.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court requests that counsel for the NYPH provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at ECF No. 53 and to mail a copy of this order to Plaintiff by certified mail.

SO ORDERED.

Dated: January 7, 2018
New York, New York

_____
GREGORY B. WOODS
United States District Judge