USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/10/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

RAMÓN ÍSÍDRO MEJÍA,                                          :
                                                             :
                                               Plaintiff,    :
                                                             :           1:16-cv-9706-GHW
                       -against-                             :
                                                             :           MEMORANDUM OPINION
                                                             :           AND ORDER
ALICIA ROBINSON, and WILFREDO VELEZ,    :
                                                             :
                                             Defendants.     :

--------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

        This is the last in a trilogy of motions to dismiss Plaintiff's claims.  On September 10, 2015,

the New York and Presbyterian Hospital ("NYPH") sent a mobile crisis team to Plaintiff Ramon

Mejia's apartment in the Bronx.  The mobile crisis team entered Plaintiff's home with his consent to

inspect for housing code violations, and shortly after, Plaintiff asked them to leave his apartment.

The mobile crisis team then called the New York City Police Department ("NYPD") to have

Plaintiff removed from his home and transported to the psychiatric department at North Bronx

Hospital, where he was involuntary detained for six days.  Plaintiff filed this matter *pro se*, bringing

claims against the mobile crisis team employees and various other defendants for violations of his

constitutional rights under 42 U.S.C. § 1983 ("Section 1983") and alleging various state law claims.

Defendants Alicia Robinson and Wilfredo Velez, the NYPH mobile crisis team members, have

moved to dismiss Plaintiff's claims against them.  Because Plaintiff fails to plead that these

Defendants are state actors, Plaintiff's Section 1983 claims against them are dismissed.  Plaintiff's

state law claims against these Defendants are also dismissed.

## I. BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case as set forth in *Mejia v. Davis*, No. 16-cv-9706 (GHW), 2018 WL 333829 (S.D.N.Y. Jan. 8, 2017), and *Mejia v. New York City Health and Hosps. Corp.*, No. 16-cv-9706 (GHW), 2018 WL 3442977 (S.D.N.Y. July 17, 2018). On February 23, 2018, the Court granted Plaintiff leave to file a fourth amended complaint for the purpose of correctly identifying Defendants Alicia Robinson and Wilfredo Velez—the members of the mobile crisis team previously identified as Miss Davis and John Doe Male Escort. ECF No. 107. On February 27, 2018, Plaintiff filed that complaint. Fourth Amended Compl. (ECF No. 108) ("FAC"). On April 25, 2018, Defendants Robinson and Velez moved to dismiss Plaintiff's fourth amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF No. 113. On May 16, 2018, Plaintiff filed an opposition to that motion. Pl.'s Opposition to Defs.' Mot. to Dismiss (ECF No. 125) ("Pl.'s Opp'n"). On May 23, 2018, Defendants filed a reply to Plaintiff's opposition. ECF No. 126.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v.*

*Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' A complaint must therefore contain more than 'naked assertion[s] devoid of further factual enhancement.' Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's allegations and "interpret[ ] [them] to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ." (internal quotation marks and citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest claims it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). Nevertheless, "dismissal of a *pro se* complaint is [ ] appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## III. DISCUSSION

### A. Federal Claims against Robinson and Velez

Plaintiff's fourth amended complaint can be construed as raising claims against Defendants Robinson and Velez for violations of Plaintiff's Fourth Amendment rights under Section 1983. Defendants[1] move to dismiss Plaintiff's claims against them on the grounds that they are not state actors under Section 1983 and otherwise not subject to liability. The Court agrees, and Plaintiff's federal claims against Robinson and Velez are dismissed.

"A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is . . . required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citing *Rendell-Bake v. Kohn*, 457 U.S. 830, 838 (1982)). "Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Rendell-Baker*, 457 U.S. at 847). "[T]he actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Plaintiff argues that Robinson and Velez are state actors subject to Section 1983 liability because the actions that they took with respect to Plaintiff were undertaken jointly with the NYPD. The parties agree that NYPH—which employs Robinson and Velez—is a private entity. They

---

[1] The Court uses the term "Defendants" to refer to Robinson and Velez only.

dispute whether Plaintiff sufficiently alleges that the mobile crisis team acted as a state actor during the events alleged in the fourth amended complaint.

The fourth amended complaint alleges that Robinson, a social worker employed by NYPH, and Velez came to Plaintiff's apartment on September 10, 2015 and "asked to inspect [Plaintiff's] apartment for housing violations." FAC ¶ 4. They seemed "dismissive of [such] housing problems." *Id.* After leaving Plaintiff's apartment at Plaintiff's request, these Defendants called the police. *Id.* ¶ 5. According to Plaintiff, anything Defendants may have told the police "would have been false" and did not "justif[y] the police coming to [his] apartment." *Id.* Plaintiff raises additional allegations for the first time in his opposition in an attempt to demonstrate Defendants' joint action with the NYPD, and other facts meant to show these Defendants were state actors. *See* Pl.'s Opp'n at 4. These allegations are that Robinson and Velez "were summoned to investigate Plaintiff by the NYPD" and are "certified, funded, and trained by the government . . . and work in collaboration with government actors." *Id.*

The Court is hesitant to consider these additional facts. They were asserted for the first time in Plaintiff's opposition. While there is no clear indication that Plaintiff's fourth amended complaint was prepared by an attorney, *see* 2018 WL 3442977, at *4 n.3, it is apparent that Plaintiff received the assistance of an attorney in drafting his opposition to Defendants' motion to dismiss. The Court has thus far given special solicitude to Plaintiff's complaints in light of his status as a *pro se* litigant. However, as in the Court's prior opinion in this case, the Court will not afford Plaintiff's memorandum of law the same solicitude. *See Spira v. J.P. Morgan Chase & Co.*, 466 F. App'x 20, 22 n.1 (2d Cir. 2012) (summary order); *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

The Court recognizes that, unlike sister circuits that condemn attorney ghostwriting on behalf of *pro se* litigants, the Second Circuit has yet to conclude that ghostwriting is necessarily an ethical violation. *See In re Fengling Liu*, 664 F.3d 367, 369-72 (2d Cir. 2011) (discussing other circuits'

approaches and concluding that, in light of a 2007 ethics opinion issued by the American Bar

Association, an attorney's ghostwriting did not violate her ethical obligations).  Nonetheless, a

court's evaluation of a *pro se* litigant's submissions is complicated by ghostwriting, and particularly

when, as here, only the opposition to a motion to dismiss is ghostwritten.  Under the liberal standard

of construction that is afforded to *pro se* pleadings, a court may properly consider facts alleged in

both the complaint itself and in the plaintiff's opposition to a motion to dismiss.  *See Walker v. Schult*,

717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider

factual allegations made by a *pro se* party in his papers opposing the motion.").  However, if that

opposition is drafted by an attorney—an attorney who is able to more readily identify the facts

material to a plaintiff's claims—the attorney is able to put those facts before the court when facts

not raised in the complaint would otherwise not be considered.  *See Williams v. U.S. Info. Sys., Inc.*,

No. 11-cv-7471 (ER), 2013 WL 214318, at *4 n.4 (S.D.N.Y. Jan. 17, 2013) ("The Court may not

consider [allegations raised for the first time in the opposition] on a motion to dismiss [a counseled

complaint] pursuant to Federal Rule of Civil Procedure 12(b)(6)); *Tomlins v. Village of Wappinger Falls

Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 363 n.9 (S.D.N.Y. 2011) ("[T]he complaint may not be

amended simply by raising new facts in opposition to Defendants' motion." (citing *Alali v. DeBara*,

No. 07-cv-2916 (CS), 2008 WL 4700431, at *3 n.6 (S.D.N.Y. Oct. 24, 2008))).

   When an attorney ghostwrites a plaintiff's opposition memorandum, it is the plaintiff, and

not the attorney, who is subject to Rule 11's obligations in connection with that memorandum.  *See*

Fed. R. Civ. P. 11(a).  As the Tenth Circuit explained, the Court "is concerned with attorneys who

'author[ ] pleadings and necessarily guide[ ] the course of the litigation with an unseen hand." *Duran

v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001) (citation omitted).  The assistance provided to a

plaintiff by the ghostwriting attorney "not only affords [the plaintiff] the benefit of this [C]ourt's

liberal construction of *pro se* pleadings, but also inappropriately shields [the ghostwriting attorney]

from responsibility and accountability for his actions and counsel." *Id.* (citation omitted).  The

ghostwriter of Plaintiff's opposition seems well aware of this conundrum—and seeks all the

solicitude afforded to a *pro se* litigant—despite the fact that Plaintiff's submission was clearly written

by counsel.  And by not signing her work, Plaintiff's ghost counsel remains free to introduce

unsupported, conclusory facts without the threat of personal sanctions.  This practice is of concern

to the Court.

Here, the additional facts asserted in the opposition are presented as nothing more than

"labels and conclusions." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).  The

opposition states that Robinson and Velez "are certified, funded, and trained by the government"

and "work in collaboration with government actors."  Pl.'s Opp'n at 4.  However, there is no

explanation of how they work in collaboration with government actors, nor any details regarding

their training and certification.  Given the conclusory nature of these allegations, it is unclear that

Plaintiff has personal knowledge of the mobile crisis team's background and ties, if any, to the State

of New York.

Moreover, these additional facts are inconsistent to a degree with those asserted in the fourth

amended complaint.  According to the opposition, Robinson and Velez are "funded" by the

government.  The fourth amended complaint, however, indicates that Robinson is a social worker

for NYPH and lists the work address for both Robinson and Velez as that hospital's address.  FAC

at 4 & ¶ 4.  These allegations suggest that both Defendants are employed by NYPH, a *private*

hospital.  The opposition fails to explain how these Defendants are "funded" by the government.

The opposition also states that Robinson and Velez were "summoned to investigate Plaintiff by the

NYPD."  Pl.'s Opp'n at 4.  Yet the fourth amended complaint alleges that they went to Plaintiff's

apartment not to investigate him, but to inspect the apartment for housing code violations.  FAC ¶

4.  These inconsistencies suggest that the conclusory facts raised for the first time in the opposition

are nothing more than speculation.  In light of these considerations, the Court declines to consider these additional facts asserted in Plaintiff's opposition.  *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("[C]ourts have no obligation to entertain pure speculation and conjecture."); *Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557)). Instead, the Court considers whether the facts pleaded in the complaint itself suggest state action.

### 1. Compulsion Test

"Under the state compulsion test, 'a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Doe v. Rosenberg*, 996 F. Supp. 343, 348-49 (S.D.N.Y. 1998) (quoting *Blum v. Yarestky*, 457 U.S. 991, 1004 (1982)), *aff'd*, 346 F. App'x 627, 629 (2d Cir. 2009).  Although the Second Circuit has not definitively determined that mobile crisis teams are not state actors, courts in the Circuit have held that mental health professionals operating pursuant to Mental Hygiene Law Sections 9.37 and 9.39 are not *per se* state actors.  *See e.g., Amid v. Chase*, 720 F. App'x 6, 11 (2d Cir. 2017) (summary order) ("[O]ur case law forecloses the possibility that a hospital is a 'state actor' merely because it confines patients pursuant to the M.H.L."); *McGugan v. Aldana-Bernier*, 752 F.3d 224 (2d Cir. 2014) (holding that the state did not compel defendant physicians to involuntarily hospitalize plaintiff); *Jackson v. Barden*, No. 12-cv-1069 (KPF), 2018 WL 340014, at *14 (S.D.N.Y. Jan. 8, 2018) (determining that the plaintiff failed to satisfy the compulsion test because the MHL is permissive and not mandatory).

The text of the MHL is permissive, and not mandatory.  *See Rosenberg*, 996 F. Supp. at 3489. The Mental Hygiene Law provides, in relevant part:

> A physician or qualified mental health professional who is a member
> of an approved mobile crisis outreach team *shall have the power to*

8

remove, or . . . to direct the removal of any person to a hospital . . . for the purpose of evaluation for admission if such person appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others.

N.Y. Mental Hygiene Law § 9.58(a) (emphasis added).  As *Rosenberg*, still one of the leading cases on this topic, explained:

> The application of the state compulsion, close nexus/joint action, and public function tests establish that the MHL, at most, provides a licensing provision *enabling* the private hospital to receive mental patients.  Licensing and regulations are insufficient to transform the Hospital [d]efendants into state actors for [Section] 1983 purposes.  Holding otherwise would expose private physicians and private hospitals to [Section 1983] liability whenever they act pursuant to the MHL, *despite the fact that their actions reflect medical judgments according to generally accepted professional standards that are not established by New York State*.

*Rosenberg*, 996 F. Supp. at 356-57 (emphasis added).  Plaintiff's opposition cites to no authority supporting the proposition that a mobile crisis team acting pursuant to the MHL is compelled by the law to act.

Here, Plaintiff's allegations do not suggest that the State of New York or the NYPD, coerced or provided significant encouragement to Defendants to investigate Plaintiff's home or to have Plaintiff removed from his home.  Plaintiff does not plead facts to demonstrate that despite the permissive language of the MHL, the State mandated Robinson and Velez to "direct the removal" of Plaintiff from his home.  Thus, absent any allegations of coercion or encouragement, Plaintiff does not sufficiently plead that the State compelled the mobile crisis team's actions, and the team's actions fail the compulsion test.[2]

---

[2] Even if the Court were to consider the fact asserted in the opposition that Robinson and Velez were summoned to Plaintiff's apartment by the NYPD, any mandate by the NYPD for the mobile crisis team to investigate Plaintiff is still insufficient to show state action.  As Defendants aptly point out, "[i]t is not enough . . . for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action."  *Sybalski v. Ind. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257-58 (2d Cir. 2008) (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)).  Here, the alleged action giving rise to Plaintiff's injury is not the fact that Robinson and Velez were called to his home.  It is that the police

9

## 2. Close Nexus Test

The close nexus test requires that a Plaintiff demonstrate "a sufficiently close nexus between the State and the challenged action of the [private] regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351(1974). This test "assure[s] that constitutional standards are only invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Rosenberg*, 996 F. Supp. at 352 (quoting *Blum*, 457 U.S. at 1004). "[B]ecause the MHL merely licenses private physicians and hospitals to commit involuntary commitments yet in no way influences the decision to commit, its relationship with [h]ospital [d]efendants is insufficient to pass the close nexus/joint action test." *Rosenberg*, 996 F. Supp. at 352-53; *see Jones v. Beth Israel Hosp.*, No. 17-cv-3445 (GHW), 2018 WL 1779344, at *4 (Apr. 12, 2018). Further, although the state licenses medical professionals to practice medicine, this in itself does not create a sufficiently close nexus. *Blum*, 457 U.S. at 1003.

Here, Plaintiff's complaint does not allege facts to indicate a sufficiently close nexus between the State of New York and Defendants' actions. Plaintiff does not allege that "the state was intimately involved" in the decision for Robinson and Velez to contact the police despite the alleged lack of any basis for doing so. *McGugan v. Aldana-Bernier*, No. 11-cv-00342 (TLM), 2012 WL 1514777, at *6 (E.D.N.Y. Apr. 30, 2012) (citing *Jensen v. Lane Cty.*, 222 F.3d 570, 575 (9th Cir. 2000)). Plaintiff alleges that the mobile crisis team left his apartment before calling the police, and he does not suggest that the team returned or otherwise worked jointly with the police. Nor does Plaintiff allege that the mobile crisis team's decision to contact the police was made jointly with the NYPD or any other state actor. Merely "summoning [ ] police officers . . . is not sufficient to constitute

---

removed Plaintiff from his home to be involuntarily committed. It can reasonably be inferred from Plaintiff's allegations that Robinson and Velez contacted the police to have Plaintiff removed from his home. However, Plaintiff alleges nothing suggesting that the *decision* to contact the police was made at the behest of the State.

joint action with state actors for the purposes of Section 1983." *Young v. Suffolk Cty.*, 922 F. Supp. 2d 368, 385 (E.D.N.Y. 2013) (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)); *see Bloom v. Town of New Windsor Police Dep't*, 234 F.3d 1261, 2018 WL 1654752, at *2 (2d Cir. 2000) (summary order) (concluding that defendant's call to the police "did not constitute state action"); *Luciano v. City of New York*, No. 09-cv-00359 (DC), 2009 WL 1953431, at * 2 (S.D.N.Y. July 2, 2009) (determining that a party is not a state actor if he supplies information to the police); *Liwer v. Hair Anew*, No. 99-cv-11117 (SAS), 2000 WL 223828, at *2 (S.D.N.Y. Feb. 25, 2000) (finding that an individual who seeks assistance from the police is not a state actor). While the MHL empowered Robinson and Velez to contact the police regarding Plaintiff's removal, Plaintiff does not plead any facts to demonstrate how Defendants' action of calling the police could be treated as "that of the State itself." *Jackson*, 419 U.S. at 351; *see Amid*, 720 F. App'x at 11 (finding plaintiff did not allege police officers "requested" or "compelled its staff to involuntary hospitalize [plaintiff]") (internal quotations and citations omitted); *Jackson*, 2018 WL 340014, at *15-17 (concluding that plaintiff failed to demonstrate the State was responsible for the physicians' decisions); *Antwi v. Montefiore Med. Ctr.*, No. 14-cv-840 (ER), 2014 WL 6481996, at *6 (S.D.N.Y. Nov. 18, 2014); *see also Rosenberg*, 996 F. Supp. at 352-53 (determining that defendant made an independent decision to commit plaintiff without consultation or direction from state officials). Therefore, Plaintiff's allegations do not satisfy the close nexus test.

### 3. Public Function Test

Under the public function test, "the required nexus may be present if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'" *Blum*, 457 U.S. at 1005 (quoting *Jackson*, 419 U.S. at 353). Even if Plaintiff had alleged that Defendants had assumed such powers, "[t]he fact that a private party has powers coextensive with the state is irrelevant to determine that state action exists." *Rosenberg*, 996 F. Supp. at 353 (citing *Harvey v. Harvey*, 949 F.2d

11

1127, 1131 (11th Cir. 1992)). As the Second Circuit has explained, private hospitals, although

"'affected with a public interest,' . . . have not been 'traditionally associated with sovereignty,' and

have long been relegated to private domain, rather than treated as 'traditionally the exclusive

prerogative of the State.'" *Jackson*, 2018 WL 340014, at *17. "[T]he hospitalization authority that

the MHL bestows on hospitals and physicians is not the sort of power traditionally reserved for the

State because '[t]he responsibility for invalid [sic] commitment lies with the physician as a private

individual,' and thus fails to satisfy the public-function test.'" *Id.* at *14 (quoting *Metro. Edison Co.*,

419 U.S. at 353).

Here, Plaintiff fails to plead facts that suggest that Defendants "assumed powers

'traditionally *exclusively* reserved to the State.'" *Beth Israel Hosp.*, 2018 WL 1779344 at *5 (quoting

*Rosenberg*, 996 F. Supp. at 353). The act of calling the police itself is not a power reserved exclusively

to the state. If that were the case, every good Samaritan who dialed 9-1-1 could be deemed a state

actor. And a request by a mobile crisis team employed by a private hospital for the police to remove

an individual pursuant to the MHL, without more, does not satisfy the public function test. *See*

*Jackson*, 2018 WL 340014, at *17-18 (finding that the MHL provides physicians with discretion to

make independent decisions as private individuals); *Bryant v. Steele*, 93 F. Supp. 3d 80, 90 (E.D.N.Y.

2015) (assessing whether a mobile crisis unit employee was a state actor and finding that the

language of the MHL "is convincing of the lack of encouragement or exercise of coercive power by

the state" to satisfy the public function test); *see also Rosenberg*, 996 F. Supp. at 353-357 (finding that

actions involving involuntary commitment are not "traditional[ly] [a] public function").

### B. State Law Claims

In addition to claims under Section 1983, Plaintiff's fourth amended complaint can be

construed to raise pendant state law claims. Before addressing the merits of Plaintiff's state law

claims, the Court must determine whether it has jurisdiction over those claims. "Subject matter

jurisdiction is a threshold inquiry a Court must answer before addressing the merits of a claim."

*Blumatte v. Quinn*, 521 F. Supp. 2d 308, 310 (S.D.N.Y. 2007) (citing *Gutierrez v. Fox*, 141 F.3d 425, 426

(2d Cir. 1998)). The Court has federal question jurisdiction over this case. Although it has

dismissed some of Plaintiff's Section 1983 claims, it has not dismissed all of them. Plaintiff's state

claims are before the Court under the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a)

(federal district courts have supplemental jurisdiction over state law claims "that are so related to"

federal claims "that they form part of the same case or controversy"). Although the Court has

dismissed all of Plaintiff's federal claims against the NYPH, federal claims under Section 1983 still

exist against other defendants to this action. The Second Circuit has made clear that a district court

may not decline to exercise jurisdiction over state law claims where federal claims remain against

other defendants and the state law claims "form part of the same case or controversy." *Ciambriello v.*

*County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296,

308 (2d Cir. 2004); *see* 28 U.S.C. § 1367(a). The state law claims raised against Robinson and Velez

are based on the same factual allegations that underpin the remaining Section 1983 claims such that

they "derive from a common nucleus of operative fact" and are thus part of the "same case or

controversy." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citation

omitted). The claims against Robinson and Velez necessarily bring the facts related to Plaintiff's due

process claim against Dr. Schear—Plaintiff's dangerousness, or lack thereof, and any other reasons

for his involuntary commitment—before the Court. *See id.* ("In determining whether two disputes

arise from a common nucleus of operative fact, we have traditionally asked whether the facts

underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily

brought the facts underlying the state claim before the court." (alteration and omission in original)

(internal quotation marks and citation omitted)). Thus, at this stage of the case, the Court must

exercise supplemental jurisdiction over these state law claims.

Defendants move to dismiss Plaintiff's negligence claim, to the extent the fourth amended complaint can be read to raise such a claim. The Court has already determined that Plaintiff fails to plead that Robinson or Velez breached any duty owed to Plaintiff, and that any such duty would arise only if Robinson and Velez were state actors. *See Mejia*, 2018 WL 333829, at \*9-10. Because the only amendment to Plaintiff's allegations since that decision has been to correctly identify the names of the mobile crisis team, the Court finds no reason to deviate from its prior conclusion. *See DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation omitted)); *Va. Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration [of the law of the case] are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks and citation omitted)).

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in its entirety.

Plaintiff is granted leave to replead his claims against Robinson and Velez. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice [in this Circuit] upon granting a motion to dismiss to allow leave to replead."). Now that the Court has decided each of the pending motions to dismiss, any amended complaint is due no later than 30 days from the date of this order. If Plaintiff elects to amend his pleading, he should include any desired amendments to his complaint with respect to all of the claims that the Court has dismissed without prejudice in each of the Court's decisions at ECF Nos. 102 & 103, in addition to amending any of the claims against Robinson and Velez. That is, Plaintiff should address all of the deficiencies that the Court has identified in its three opinions evaluating Plaintiff's third and fourth amended complaints. Plaintiff is reminded that any fifth amended complaint replaces, and will not supplement, his previously filed

14

complaints.

The Court requests that counsel for Defendants Robinson and Velez provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at ECF No. 113 and to mail a copy of this order to Plaintiff by certified mail and by regular, first class mail.

SO ORDERED.

Dated:  August 10, 2018
New York, New York

_____
GREGORY H. WOODS
United States District Judge