United States District Court
Southern District of New York

RAMON I MEJIA

Write the full name of each plaintiff.

16 cv 9706

(Include case number if one has been assigned)

Sixth AMENDED
COMPLAINT

-against-

ALICIA ROBINSON; AND
WILFREDO VELEZ; JOHN DOE
POLICE OFFICERS #1 THRU #12; N.Y.
PRESBYTERIAN COLUMBIA-U-MEDICAL Center;

Do you want a jury trial?
☒ Yes  ☐ No

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.  NEW YORK CITY; DETECTIVE DOMINICK MCDONOUGH, SHIELD #05598; POLICE OFFICER MADELINE CRUZ, SHIELD #23911; P/O MILDRED RODRIGU SHIELD #25268

NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may contain only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

SERGEANT, MICHAEL HENNELLY, SHIELD #01264
DETECTIVE DERRICK MOYER, SHIELD #05903; #1
JOHN DOE EMERGENCY MEDICAL TECHNICIAN #2
NORTH CENTRAL BRONX HOSPITAL, N.Y.C HEALTH AN
HOSPITALS CORPORATION;  JOHN DOE DOCTOR
#1; MARK A SCHEAR, MD; JOHN DOE NURSES
#1 → #5; JOHN DOE ORDERLY #1; RAYMOND C. LIR
LOURDIE JEAN PIERRE, R.N.; PENELOPE CARMICHAEL MD
GEORGE THOMAS, PCT; KAREN CASTRO, R.N.

Rev. 1/9/17

## I.  BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☒  Federal Question

☐  Diversity of Citizenship

### A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

42 U.S.C § 1983

### B.  If you checked Diversity of Citizenship

#### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
(Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                    (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

RAMON        ISIDRO     MEJÍA
First Name        Middle Initial    Last Name

3025 GODWIN TERRACE, APT #5F, BRONX
Street Address

N.Y.C                    N.Y.S              10463-5357
County, City              State              Zip Code

(646) 806-6194           NONE
Telephone Number         Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:  ALICIA ROBINSON
First Name          Last Name

SOCIAL WORKER
Current Job Title (or other identifying information)

NEW YORK PRESBYTERIAN COLUMBIA UNIV.
Current Work Address (or other address where defendant may be served)

MEDICAL CENTER, 622 W 168th ST. NYC N.Y.S
County, City          State          Zip Code  10032

Defendant 2:  WILFREDO VELEZ
First Name          Last Name

NEW YORK PRESBYTERIAN COLUMBIA UNIV.
Current Job Title (or other identifying information)

MEDICALCENTER 622 W 168th ST. NYC, N.Y.S
Current Work Address (or other address where defendant may be served)  10032

|          |          |          |
|----------|----------|----------|
| County, City | State | Zip Code |

Defendant 3:  John Doe  Police Officers  1-12
First Name          Last Name

POLICE OFFICERS
Current Job Title (or other identifying information)

50th PRECINCT 3450 KINGSBRIDGE AVENUE
Current Work Address (or other address where defendant may be served)

BRONX, N.Y.C   N.Y.S          10463-4004
County, City          State          Zip Code

Defendant 4: *New York  Presbyterian -Columbia University  Medical Center*

First Name                              Last Name

_____

See attached for
additional defendants.

Current Job Title (or other Identifying Information)

*622 W168th. STREET, NEW YORK, NEW YORK*

Current Work Address (or other address where defendant may be served)

*10032*

County, City                    State                    Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: *3025 GODWIN TERRACE Apt #5F, BRON*
*N.Y.C., N.Y.S 10463 → (2015), ENDINGAT(N.C.B.)*

Date(s) of occurrence: *SEPT 10TH, APPROX. 10:00 to 10:30AM To*

FACTS: *SEPT 16TH, 2015 AT APPROXIMATELY 2:15P.*

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and what each defendant personally did or failed to do that harmed you. Attach
additional pages If needed.

*PLEASE SEE ATTACHED!*

**INJURIES:**

If you were injured as a result of these actions, describe your Injuries and what medical treatment, if any, you required and received.

INJURIES TO MY RIGHT Foot, the BACK TRYING to KEEP FROM PLUNGING Down the Stairs Due to AGGRESSIVE pushing & shoving BY FEMALE P/O's CRUZ & RODRIGUEZ. Treated BY Podiatrist. Need Sleep Disorder Treatment to EXACERBATE the Night Mares Due to ACTIONS BY POLICE OFF.

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

FEAR AND PARANOID ANXIETY AT SIGHT OF P/O's IN PUBLIC AREAS:

I WANT substantial Amounts to compensate & Appease the Callous Actions uncalled For in the Behavior of these Authoritative individuals. Compensatory & punitive Damages of $100,000,000 total.

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

10/29/2018
Dated

Ramon I Mejia
Plaintiff's Signature

RAMON
First Name

I
Middle Initial

SIDRO
Last Name

MEJIA

P/o Box 579 KINGSBRIDGE, BRONX,
Street Address

N.Y.C   N.Y.S
County, City

N.Y.S
State

10463
Zip Code

(646) 806 - 6194
Telephone Number

NONE
Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☒ Yes  ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**Additional Defendants:**

5. New York City

6. Detective Dominick McDonagh, Shield No. 05598
Emergency Services Unit 04, 3450 Kingsbridge Avenue
Bronx, New York 10463

7. Police Officer Madeline Cruz Shield No. 23911
50th Precinct, 3450 Kingsbridge Avenue
Bronx, New York 10463

8. Police Officer Mildred Rodriguez Shield No. 25268
Detective Borough Bronx, Simpson Street,
Bronx, New York 10459

9. Sergeant Michael Hennelly, Shield No. 01264
50th Precinct, 3450 Kingsbridge Avenue
Bronx, New York 10463

10. Detective Derrick Moyer, Shield No. 05903
Emergency Services Unit 04, 3450 Kingsbridge Avenue
Bronx, New York 10463

11. JOHN DOE EMERGENCY MEDICAL TECHNICIAN # 1 and 2

12. North Central Bronx Hospital, New York City Health and Hospitals Corporation

13. JOHN DOE DOCTOR #1, *A K A PENELOPE CARMICHAEL, M.D.*

1

14. Mark A. Schear, MD

15. JOHN DOE Nurses #1-5, *AKA RAYMOND C. LI R.N, jAKA LOURDIE JEAN PIERRE, R.N. jAKA KAREN CASTRO R.N*

16. JOHN DOE Orderly #1, *jAKA A.K.A GEORGE THOMAS, P.C.T*

**Statement of Facts:**

1. PLAINTIFF is RAMON MEJIA, a 65 old male of Latino and Caribbean Indian descent.

2. PLAINTIFF resides at 3025-27 Goodwin Terrace, Apt 5F, Bronx NY 10463.

3. On or about, on September 10, 2015, at approximately 9:30 am, PLAINTIFF was residing in his apartment committing no visible crime. PLAINTIFF was not threatening anyone, physically attacking anyone, or causing any disturbance of any kind. PLAINTIFF was well groomed, clothed, and appeared in good physical health.

4. A woman named Ms. ALICIA ROBINSON came to PLAINTIFF's apartment and identified herself as a social worker from Columbia Presbyterian Hospital. Ms. ALICIA ROBINSON and WILFREDO VELEZ unknown to PLAINTIFF about 6 feet 2 inches in height knocked on PLAINTIFF's apartment door. They asked to inspect PLAINTIFF's apartment for housing code violations. PLAINTIFF invited them in. While they were inside the apartment, Ms. ALICIA ROBINSON was dismissive of PLAINTIFF's housing problems. PLAINTIIFF told Ms. ALICIA ROBINSON and her partner to leave and never come back. They left. PLAINTIFF never threatened Ms. ALICIA ROBINSON or the male escort. PLAINTIFF never yelled at Ms.

2

ALICIA ROBINSON or the male escort. PLAINTIFF never physically assaulted Ms. ALICIA ROBINSON or the male escort.

5. Upon Plaintiff's information and belief, based on a conversation with Plaintiff's sister and neighbor, Ms. ALICIA ROBINSON and WILFREDO VELEZ, called the police. Nothing that they told the police would have justified the police coming to Plaintiff's apartment. Because Plaintiff had not engaged in any behavior to justify the police coming to the apartment, they could not have said anything truthful to the police that would have justified the police coming to Plaintiff's apartment. If she did tell the police something that would have justified them coming to Plaintiff's apartment, it would have been false.

6. Approximately 15 minutes later, JOHN DOE POLICE OFFICERS #1-12 began banging on PLAINTIFF's door demanding to talk to PLAINTIFF. They demanded that PLAINTIFF stand directly behind PLAINTIFF's closed front door. PLAINTIFF refused.

7. PLAINTIFF heard a loud noise, and then something was used on the outside of the door to blow the peephole into the apartment. The peephole object ricocheted around the apartment. An open hole was left where the peephole object was previously.

8. From PLAINTIFF's vantage point, PLAINTIFF could see red dots on the wall opposite the door that appeared to be from a laser sight on a gun.

9. PLAINTIFF asked JOHN DOE POLICE OFFICERS #1-12, who was in charge. JOHN DOE POLICE OFFICERS #1-12 responded that Dt. McDONOUGH was present and in charge.

10. PLAINTIFF never opened the door. PLAINTIFF never consented to the police coming into the apartment. PLAINTIFF never threatened anyone. PLAINTIFF never committed any visible crime while inside his apartment. PLAINTIFF never caused any disturbance of any kind inside his apartment.

3

11. After approximately one hour of causing a disturbance at PLAINTIFF's door, JOHN DOE POLICE OFFICERS #1-12 and Dt. McDONAGH broke down PLAINTIFF's door and entered his apartment in full riot gear without his consent, without a warrant, without probable cause, and without exigent circumstances.

12. One of JOHN DOE POLICE OFFICERS #1-12 in full riot gear, who was tall and large, put handcuffs on PLAINTIFF and then pushed PLAINTIFF out the door. No explanation was provided to PLANTIFF. Because PLAINTIFF was handcuffed, and had an injured foot, PLAINTIFF had a hard time going down the stairs. PLAINTIFF was in a great deal of danger falling down the stairs.

13. PLAINTIFF was pushed very roughly by POLICE OFFICER's MADELINE CRUZ and MILDRED RODRIGUEZ on his way down the stairs causing PLAINTIFF to stumble and lose balance. PLAINTIFF asked CRUZ and RODRIGUEZ to please stop pushing very roughly. PLAINTIFF continued to stumble as CRUZ and RODRIGUEZ continued to push PLAINTIFF down the stairs. PLAINTIFF's right foot was injured while stumbling down the 6 flights of stairs. PLAINTIFF continues to experience pain in that right foot to the present. When PLAINTIFF tries to put his full weight on the foot PLAINTIFF feels pain.

14. The police officers took PLAINTIFF to an ambulance outside. Once PLAINTIFF was placed in to an ambulance JOHN DOE EMERGENCY MEDICAL TECHNICIAN # 1 and 2, transported PLAINTFF to NORTH CENTRAL BRONX HOSPITAL along with a uniformed POLICE OFFICER. At the hospital, police were everywhere.

15. At no point prior to arriving at the hospital did PLAINTIFF threaten himself or another person. At no point during the entirety of this interaction did PLAINTIFF verbally or

physically threaten, intimidate, or frighten another person or himself, nor did he attempt to do any of those actions.

16. Once arriving at the hospital, PLAINTIFF was taken to the Psychiatric Unit on the 13th floor. In that unit, PLAINTIFF was uncuffed, but informed that he was not free to leave. Once at the hospital, Plaintiff never engaged in any threatening or dangerous behavior directed at himself or others. Plaintiff was well-groomed, appeared physically healthy, and appropriately clothed. PLAINTIFF was favoring his right foot due to the injury on the staircase in the apartment building.

17. The ambulance took PLAINTIFF to North Central Bronx Hospital. Upon entering the hospital, staff asked PLAINTIFF basic questions that included his name, address and date of birth and recorded the information on a computer. PLAINTIFF answered all questions that were asked. No medical questions were asked of plaintiff. PLAINTIFF was not asked if he was injured. PLAINTIFF was not asked if he was allergic to anything. PLAINTIFF was not asked why he was at the hospital. Another staff member asked PLAINTIFF to remove all his property from his pockets and person and logged the items on a form by hand. PLAINTIFF was then taken to the 13th floor of the hospital. While moving through the hospital PLAINTIFF noticed many armed uniformed police officers. PLAINTIFF realized this was not a regular hospital. Hospital staff told PLAINTIFF to sit in area on the 13th Floor while his room was being prepared. Despite their failure to perform an independent assessment, the JOHN DOE DOCTOR #1 ordered PLAINTIFF forcibly hospitalized. PLAINTIFF was not free to leave.

18. PLAINTIFF saw the doors had code systems on them that employees entered to leave and enter areas.

19.PLAINTIFF was afraid to try and leave, and was involuntarily committed and imprisoned at the hospital. At no point prior to being involuntarily committed did he threaten himself or another person. At no point did PLAINTIFF verbally or physically threaten, intimidate, or frighten another person, nor did he attempt to do any of those actions.

20.PLAINTIFF remained at the hospital from September 10, 2015 until September 16, 2015. PLAINTIFF was forcibly hospitalized for a total of 6 days and a few hours.

21. Not long after arrival, Dr. MARK A. SCHEAR ordered that PLAINTIFF be medicated. Dr. MARK A. SCHEAR did not perform an independent evaluation. No hospital staff performed a medical evaluation of PLAINTIFF. PLAINTIFF did not consent to taking the medication. The medication that was forcibly injected into PLAINTIFF was Risperdal. Despite PLAINTIFF's stated objection to taking the medication, he was held down by JOHN DOE POLICE OFFICER #1-12, JOHN DOE NURSE #1 and other hospital staff. A nurse forcibly inserted a needle into PLAINTIFF's arm and pushed a plunger connected to that needle, injecting Risperdal, a medication, into PLAINTIFF's body over PLAINTIFF's objection.

22.Every time PLAINTIFF passed by the attending nurses station, he asked to be released from the hospital. That request was denied. PLAINTIFF passed by the attending nurses station multiple times a day. PLAINTIFF was told that only the in house psychologist was authorized to release him or Dr. MARK A. SCHEAR. PLAINTIFF was not told of any other way to be released from the hospital.

23.While in the hospital, JOHN DOE ORDERLY #1 would regularly tell PLAINTIFF that he had to take pills prescribed by Dr. MARK A. SCHEAR. PLAINTIFF was not given the option to refuse to take the medication, and he was forced to take it. JOHN DOE NURSE # 5 would tell PLAINTIFF that if he did not take the pills she would report it to her supervisor and

the supervisor would send the Male and Female Nurses to return and physically force PLAINTIFF to take the pills.

24. On September 16, 2015, PLAINTIFF was released from the hospital to the care of his two sisters Sandra Mejia and Marina Mejia.

25. At no point while PLAINTIFF was at the hospital did he threaten himself or another person. At no point during the entirety of this interaction did PLAINTIFF verbally or physically threaten, intimidate, or frighten another person, nor did he attempt to do any of those actions. At no point did PLAINTIFF threaten or engage in self-harm. PLAINTIFF was always well-groomed and while at the hospital, At no point did Plaintiff consent to being in the hospital.

26. From September 10, 2015 until September 16, 2015. PLAINTIFF was never an imminent danger to himself or others. Even if he was a danger to himself or others, forced hospitalization would not have been the least restrictive alternative for dealing with PLAINTIFF's condition.

27. The entirety of PLAINTIFFs forced hospitalization, forced medication through needles and pills, and invasive testing (blood draws), lacked any medical or safety justification. PLAINTIFF had never been forcibly hospitalized or voluntarily hospitalized for mental health treatment prior to this occurrence.

28. PLANTIFF is disabled. PLANTIFF's disability is due to an injury on the job when employed by the New York Transit Authority.

29. PLAINTIFF filed a timely notice of claim with the New York City Comptroller's Office.

## ADDITIONAL FACTS:

Plaintiff Notes th at according to the N.Y.C Dept of Health Website, "[t] Here ARE ABout two DOZEN (MOBILE CRisis) TEAMS IN the CITY, AND THEY ARE AVAILABLE IN THE BRonx, BROOKLYN, MANHATTAN, AND QUEENS." CRisis SERVICES/MENTAL Health: MOBILE CRisis TEAMS, N.Y.C DEPt OF HEALTH Website, Located at: HTTPs://www 1. NY. GOV/SITE/DOH/HEALTH/HEALTH-TOPICS/CRISIS-EMERGENCY-SERVICES_MOBILE-CRISIS-TEAMS. PAGE(LAST ACCESSED ON MAY 13Th, 2018). THESE TEAMS RESPOND TO SITUATIONS THAT ARE NOT EMERGENCIES, WHICH MEANS the TEAMS RESPONDS to situations THAT ARE Not LIFE THREATENING OR POTENTIALLY VIOLENT SITUATIONS THAT DEMAND IMMEDIATE RESPONSES. CRisis SERVICES MENTAL HEALTH, N.Y.C DEPT OF HEALTH Website, LOCATED AT: HTTPS://www 1. N.Y.C. GOV/SITE/DOH/HEALTH/HEALTH-TOPICS/CRISIS-EMERGENCIES-SERVICES. PAGE(LAST ACCESSED ON MAY 13Th, 2018).

THESE TEAMS GENERALLY RESPOND WITHIN
48 HOURS. ID

SEE EXHIBIT A AND EXHIBIT B.

<u>**Prayer for Relief**</u>

30. Wherefore, Plaintiff prays that the Court grants such relief as may be appropriate including injunctive orders and damages, and cost as follows:

    a. A judgment directing Defendants to make Plaintiff whole for the loss of his property in the amount of _____ dollars.

    b. A judgment directing Defendants to make Plaintiff whole with compensatory damages for mental anguish, loss of dignity, humiliation, harm to reputation, and pain and suffering, emotional trauma, and denial of civil rights in the amount of 100,000,000 _____ dollars.

    c. A judgment awarding Plaintiff punitive damages.

    d. An award of prejudgment interest, costs, and attorneys' fees.

31. Such other relief that the court may deem just and proper.

Crisis Emergency Services

Page 1 of 1

Menu


Health

*EXHIBIT A*

Search
Health TopicsNeighborhood HealthEmergency PrepPublications

# Crisis Services/Mental Health

- NYC Well
- Mobile Crisis Teams
- Child & Adolescent Mental Health Emergency/Crisis Services

A "crisis" situation is one that requires prompt attention, but is not *immediately* life threatening. That is, a "*crisis*" occurrence is one that can be improved or resolved by a visit from a mobile crisis team, who generally responds within 48 hours, or by telephone counseling and referral by NYC Well, the Health Department's 24 hour information and referral hotline operated by the Mental Health Association of New York City, Inc.

**1-888-NYC-WELL** (1-888-692-9355) is a free, confidential help line for New York City residents. You can call 24 hours per day/7 days a week. The staff of trained mental health professionals help callers find mental health and substance abuse services. NYC Well is multilingual and multicultural:

- **1-888-NYC-WELL** (1-888-692-9355)
- **1-888-692-9355** (Español)
- **1-888-692-9355** (中文)
- **711** (TTY for hearing impaired)

You can also text **WELL** to 65173 or go to NYC Well, an online resource for individuals, families and agencies in need of help and information.

## Emergencies

"*Emergencies*" are life threatening, or potentially violent, situations that demand immediate response. In such instances, the public should summon police by **calling "911."**

## Additional Resources

The SAMHSA Behavioral Health Treatment Services Locator is an on-line source of information for persons seeking treatment facilities in the United States or U.S. Territories for mental health and/or substance abuse/addiction problems.

Crisis Emergency Services/Mobile Crisis Teams

Menu



Health

*E x H i b i T B*

Search
Health TopicsNeighborhood HealthEmergency PrepPublications

# Crisis Services/Mental Health: Mobile Crisis Teams

- Crisis Services/Mental Health Main Page
- NYC Well
- Child & Adolescent Mental Health Emergency/Crisis Services

A mobile crisis team is a group of health professionals, such as nurses, social workers and psychiatrists, who can provide mental health services, primarily in people's homes.

There are about two dozen teams in the city, and they are available in the Bronx, Brooklyn, Manhattan and Queens.

## Request a Team

You can request help from a mobile crisis team if you are concerned about a family member, friend, or acquaintance who is experiencing (or at risk of) a psychological crisis. You can also request a team for yourself. To request a team, call NYC Well at (888) NYC-WELL (888-692-9355).

## Services Provided

Mobile crisis teams can provide mental health engagement, intervention and follow-up support to help overcome resistance to treatment. Depending on what a person is willing to accept, the teams may offer a range of services, including:

- Assessment
- Crisis intervention
- Supportive counseling
- Information and referrals, including to community-based mental health services

## Transport to Psychiatric Emergency Room

If a mobile crisis team determines that a person in crisis needs further psychiatric or medical assessment, they can transport that person to a hospital psychiatric emergency room.

Crisis Emergency Services Mobile Crisis Teams

ge 2 of 2

Mobile crisis teams may direct police to take a person to an emergency room against their will only if they have a mental illness (or the apparenace of mental illness) and are a danger to themselves or others. This is in accordance with NYS Mental Hygiene Law.

Ramón Í. Mejia,
P.O. Box 579, Kingsbridge Station
Bronx, NY 10463

RECEIVED
SDNY DOCKET UNIT
2018 OCT 30   AM 10:50

Pro Se Intake
Unit

Attn: Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 12C
New York, New York 10007-1312