USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/28/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
RAMÓN ÍSÍDRO MEJÍA,

               Plaintiff,

        -v -

N.Y.P.D., *et al.*

               Defendants.
------------------------------------------------------------- X

1:16-cv-9706-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

      On September 10, 2015, a mobile crisis team (the "MCT") was sent to *pro se* Plaintiff Ramon Mejia's apartment in the Bronx. The MCT entered Plaintiff's home with his consent to inspect for housing code violations. Shortly thereafter, Plaintiff asked them to leave his apartment. The MCT later called the New York City Police Department (the "NYPD") to have Plaintiff removed from his home and transported to the psychiatric department at North Bronx Hospital ("NBH"), where he was involuntary detained for six days and forced to take psychoactive medication against his will.

      In this opinion, the Court evaluates the adequacy of the claims in Plaintiff's Sixth Amended Complaint ("6th AC") against MCT members Alicia Robinson ("Robinson") and Wilfredo Velez ("Velez"), as well as New York Presbyterian Hospital ("NYPH"), New York City Health and Hospitals Corporation ("HHC"), and HHC employees George Thomas, PCT ("Thomas"), Raymond C. Li, RN ("Li"), Lourdie Jean Pierre, RN ("Pierre"), and a subcontractor who worked as a nurse in HHC, Karen Castro ("Castro"). The 6th AC, as with the prior complaints before it, is construed to allege violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983 ("Section 1983"), as well as state law claims.

Before the Court are NYPH's, Robinson's, Velez's, and HHC's motions to dismiss the claims against them. Also, before the Court are motions to dismiss served by the recently identified parties, Thomas, Li, Pierre, and Castro. For the reasons that follow, all of the pending motions to dismiss are GRANTED.

I. **Procedural History**

In this opinion, in many respects, the Court retreads a path that it has walked before. Plaintiff has amended his complaint five times, and the Court has issued three opinions in the course of this litigation, in which the majority of the claims in prior versions of the 6th AC were dismissed. *Mejia v. Davis*, No. 16-cv-9706-GHW, 2018 WL 333829 (S.D.N.Y. Jan. 8, 2017) ("*Mejia I*"); *Mejia v. New York City Health & Hosps. Corp.*, No. 16-cv-9706-GHW, 2018 WL 3442977 (S.D.N.Y. July 17, 2018) ("*Mejia II*"); *Mejia v. Robinson*, No. 16-cv-9706-GHW, 2018 WL 3821625 (S.D.N.Y. Aug. 10, 2018) ("*Mejia III*"). The Court will not reiterate the full facts and procedural history of this case, and instead assumes familiarity with its prior opinions.

On February 23, 2018, the Court granted Plaintiff leave to serve his Fourth Amended Complaint ("4th AC"), "for the limited purpose of correctly identifying the defendants named in the third amended complaint." Order, Dkt. No. 107; 4th AC, Dkt. No. 108. In keeping with that order, the Third Amended Complaint ("3rd AC") and 4th AC are identical in all other respects. *Compare* 3rd AC, Dkt. No. 66 *with* 4th AC.

On September 10, 2018, in the wake of the Court's decision in *Mejia III*, Plaintiff served his Fifth Amended Complaint ("5th AC"), purportedly to cure the deficiencies identified in the Court's prior opinions. Dkt. No. 132. The 5th AC, however, is distinctly similar to the 4th AC. *Compare* 5th AC, Dkt. No. 132 *with* 4th AC, Dkt. No. 108. Indeed, the bodies of the 4th AC and the 5th AC are substantively identical. The only differences between the 4th AC and the 5th AC are as follows. In the 5th AC, Plaintiff included a handwritten page of additional facts in which he pleaded that (1)

2

there are "about two dozen" mobile crisis teams in New York City, which serve the Bronx, Brooklyn, Manhattan, and Queens; (2) mobile crisis teams respond to non-emergency crises, which are non-life threatening, nonviolent situations, which do not require an immediate response and (3) mobile crisis teams "generally respond within 48 hours." 5th AC, 15-16. Beyond those pleadings, Plaintiff included as exhibits to the 5th AC, printouts of two website discussing mobile crisis teams. Exhibit A is a printout of a New York City municipal website that provides information about mobile crisis teams, and the types of situations to which they respond.[1] *Id.*, Ex. A. Exhibit B is a printout of another New York City municipal website that also provides information about mobile crisis teams—including, in pertinent part, the circumstances in which the New York Mental Hygiene Law ("MHL") permits mobile crisis teams to direct the NYPD "to take a person to an emergency room against their will."[2] *Id.*, Ex. B. Aside from the additions described above, the 5th AC is identical to the 4th AC.

On September 18, 2018, the Court directed HHC to "ascertain the identity and (if applicable) badge number of each of the unidentified individual defendants whom Plaintiff seeks to sue here and the address where each of those defendants may be served." Dkt. No. 135. HHC complied on September 26, 2018, providing information as to Defendants Li, Pierre, Thomas and Castro.[3] Dkt. No. 142. On October 18, 2018, the Court granted Plaintiff leave to amend the 5th AC, to substitute the named defendants for the John Doe defendants named in the 5th AC —noting that "[o]her than the modifications warranted by the addition of those [new] parties, Plaintiff is not

---

[1] Exhibit A can also be found at: https://www1.nyc.gov/site/doh/health/health-topics/crisis-emergency-services.page (last visited 7/19/19).

[2] Exhibit B can also be found at: https://www1.nyc.gov/site/doh/health/health-topics/crisis-emergency-services-mobile-crisis-teams.page (last visited 7/19/19).

[3] HHC also provided information as to putative defendant Penelope Carmichael, M.D. However, the Court understands that Dr. Carmichael has not been served. Accordingly, she is not a defendant.

authorized to make alterations to the [5th AC]." Order, Dkt. No. 152. Plaintiff served his 6th AC on October 29, 2018. 6th AC, Dkt. No. 154. Other than adding Defendants Li, Pierre, Thomas, and Castro to the caption of the 6th AC, the 6th AC is identical to the 5th AC.[4] Indeed, the caption of the 6th AC still names all of the prior John Doe defendants, as well as the newly named defendants whose identities were provided to replace certain John Doe defendants. Plaintiff made no modifications to the body of the 6th AC—with the consequence that while the caption now refers to the newly named defendants, the allegations in the 6th AC still refer to numerous John Doe defendants rather than the newly named defendants. *See* 6th AC, Caption (naming John Doe Nurses #1-5); ¶ 21 (containing allegations as to "John Doe Nurse #1"); ¶ 23 (containing allegations as to "John Doe Nurse #5"). As discussed further below, this leaves the Court with insufficient information regarding the specific conduct that certain of the newly named defendants may be alleged to have engaged in.

Before the Court are three motions to dismiss. The first was served by NYPH on behalf of itself and its employees, Robinson and Velez, on November 16, 2018 ("NYPH Mot."). Dkt. No. 159. Plaintiff opposed that motion on December 7, 2019 ("Opp. to NYPH Mot."). Dkt. No. 172. On December 13, 2019, the NYPH Defendants submitted a reply declaration, which noted that Plaintiff's Opposition was the same document he had submitted in opposition to Defendants Robinson's and Velez's (but not NYPH's) motion to dismiss his 4th AC—the only difference being that he had whited out the word "Fourth" on the first and second pages, and replaced it with a handwritten "Sixth." NYPH Reply, Dkt. No. 172. Plaintiff has not opposed NYPH's arguments in favor of dismissal of the claims against it.

The second motion to dismiss was served on October 29, 2018, by HHC on behalf of itself and its employees, Pierre, Li, and Thomas (the "HHC Mot."). Dkt. No. 183. Plaintiff opposed that

---

[4] Putative defendant Carmichael was also added to the caption.

4

motion on February 1, 2019 ("Opp. to HHC Mot."). Dkt. No. 195. HHC, Pierre, Li and Thomas replied on February 11, 2019 ("HHC Reply"). Dkt. No. 202.

The third motion to dismiss was filed by Defendant Castro on February 11, 2019. As of the date of this opinion, Plaintiff has not opposed that motion.

All three motions are now before the Court and ripe for adjudication.

## II.    Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' A complaint must therefore contain more than 'naked assertion[s] devoid of further factual enhancement.' Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss.

5

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's allegations and "interpret[ ] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ." (internal quotation marks and citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest claims it suggests.") (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)). Nevertheless, "dismissal of a *pro se* complaint is appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

### III. Claims Against New York Presbyterian Hospital/Columbia Medical Center and It's Employees Robinson and Velez[5]

In *Mejia I*, the Court granted NYPH's motion to dismiss the 3rd AC in its entirety. 2018 WL 333829, at *11. Plaintiff's Section 1983 claims against NYPH, which were based on a theory of direct liability, were dismissed with prejudice and his state law claims for false arrest, slander, and medical malpractice were dismissed with prejudice. *Id.* Accordingly, the Court need not revisit those claims here. Plaintiff's *Monell* and state law negligence claims against NYPH, however were dismissed without prejudice. *Id.*

---

[5] The Court assumes familiarity with Court's prior decisions in in *Mejia I and III*, which are incorporated by reference.

On August 10, 2018, the Court issued *Mejia III*, dismissing Plaintiff's Section 1983 and state law claims against Robinson and Velez. The Court explained that neither Plaintiff's Section 1983 claims, nor his state law claims, were adequately pleaded. 2018 WL 3821625, at *4-7. The viability of Plaintiff's federal and state claims against Robinson and Velez were ultimately contingent on Plaintiff adequately pleading that either Robinson or Velez were state actors, and as Plaintiff had failed to do so, his claims against them were dismissed without prejudice. *Id.*

On September 10, 2018, Plaintiff filed his 5th AC, and on October 29, 2018, he served his 6th AC. As discussed above, the 5th AC and 6th AC are nearly identical to the 4th AC, which is, in turn, nearly identical to the 3rd AC. *See* § I, above. Indeed, the only pertinent amendment to the 6th AC as compared to the 3rd AC and 4th AC on which the Court has already ruled, is the addition of additional pleadings as to the nature of mobile crisis teams and Plaintiff's inclusion of printouts of certain New York City municipal websites discussing mobile crisis teams. As a result, the Court is faced with a 6th AC which contains, as explained below, no new pertinent facts or allegations which could impact the Court's prior analysis.

Compounding the *déjà vu* is the fact that Plaintiff's opposition to NYPH's motion to dismiss is the same document he served in opposition to Robinson and Velez's motion to dismiss the 4th AC, with the word "fourth" replaced with the word "sixth" on the first and second pages. *Compare* Dkt. No. 125 and Dkt. No. 172. The consequences of Plaintiff's failure to provide new briefing are two-fold. First, the Court has been presented with no new argument as to why Plaintiff's claims against Robinson and Velez should not be dismissed. And second, Plaintiff has failed to oppose NYPH's motion to dismiss, as his opposition, unsurprisingly, only pertains to Robinson and Velez, not NYPH.

Accordingly, the issue presented is whether Plaintiff's inclusion of extra information as to the nature of mobile crisis teams is sufficient to sustain any of his remaining claims against NYPH,

Robinson, or Velez, despite the lack of any new argumentation in support of his position. For the reasons that follow, the new information included in the 6th AC is insufficient to sustain Plaintiff's claims against NYPH, Robinson, and Velez, which are dismissed.

Even construed liberally, the only information presented in the 6th AC which was not contained in Plaintiff's 3rd AC and 4th AC pertains to the MCT. In the 6th AC, Plaintiff has alleged that mobile crisis teams have the power to direct the removal of a person who appears to be undergoing a mental health crisis to a hospital, and has directed the Court to municipal websites confirming this authority. The Court understands that Plaintiff included this information to bolster his contentions that NYPH and its employees qualify as state actors for the purposes of this case. However, in *Mejia I* and *III*, the Court specifically considered the impact of New York Mental Hygiene Law § 9.58, which states, in pertinent part:

> [a] physician or qualified mental health professional who is a member of an approved mobile crisis outreach team *shall have the power to remove, or . . . to direct the removal of any person to a hospital* . . . for the purpose of evaluation for admission if such person appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others.

*Mejia I*, 2018 WL 333829, at *9 (emphasis added); *Mejia III*, 2018 WL 3821625, at *5.

The Court was aware that the New York Mental Hygiene Law granted the power to the MCT to direct the removal of persons when it decided *Mejia I* and *Mejia III*, and expressly considered that issue in those decisions. Plaintiff's additions to the 6th AC, which merely point the Court to information already considered in its prior opinions, do not warrant reconsideration or revaluation of those decisions. Accordingly, for the reasons articulated in *Mejia I* and *Mejia III*, Plaintiff's claims against NYPH, Robinson, and Valez are dismissed.

## IV. Claims Against HHC[6]

In *Mejia II*, the Court dismissed Plaintiff's *Monell* claims against HHC without prejudice due to his failure to adequately plead any qualifying "policy or custom." 2018 WL 3442977, at *12-14. The Court also dismissed Plaintiff's state law claims against HHC for failing to satisfy "the requirement of pleading timely service on HHC." *Id.* at *15. However, the Court noted that "Plaintiff asserts in his opposition that his complaint can also be read to raise a Fourth Amendment claim. Defendants do not move to dismiss that claim. Therefore, to the extent that Plaintiff's fourth amended complaint can be read to assert a Fourth Amendment claim, or any other federal claim, those claims survive." *Id.* at *6.

As discussed above, the only modifications to the 6th AC relate to the MCT. There is no allegation, however, that HHC has any relationship with the MCT. No MCT member is alleged to be an employee of HHC, nor is HHC alleged to have any connection to the MCT program. Indeed, the 6th AC is devoid of any allegations of a connection between the MCT and HHC, which the Court could consider in light of the 6th AC. Accordingly, Plaintiff's modification to the Complaint in the 6th AC have no impact on, nor even connection to, the Court's analysis in *Mejia II*. As Plaintiff has failed to amend his pleading to account for the Court's analysis in *Mejia II*, the Court's prior ruling controls. For the same reasons articulated in *Mejia II*, Plaintiff's *Monell* claim and state law claims against HHC are dismissed.[7]

However, HHC has not provided any argumentation as to any residual federal claims, such as a potential Fourth Amendment claim, asserted by Plaintiff. Accordingly, to the extent any such claims exist, they survive.[8]

---

[6] The Court assumes familiarity with Court's prior decisions in in *Mejia II*, which is incorporated by reference.

[7] This ruling has no impact on the claims against Dr. Schear that survived *Mejia II*.

[8] The Court takes no position on the existence or viability of any such claims. However, in the absence of briefing on this issue, the Court, again, declines to dismiss any residual federal claims against HHC

9

### V. Claims against HHC's Employees

#### A) Claims against Thomas

For the reasons that follow, Plaintiff's claims against Thomas are dismissed.

##### 1. Background

While George Thomas is named in the caption of the 6th AC, the body of the 6th AC never uses his name. Nonetheless, as George Thomas was the only orderly whose identity was provided by HHC pursuant to the Court's *Valentin* order, and only one John Doe Orderly is named in the 6th AC, the Court understands that references to John Doe Orderly #1 in the 6th AC refer to Defendant Thomas. Accordingly, the only allegations in the 6th AC which pertain to Defendant Thomas are contained in paragraph 23 of the 6th AC, which states, in pertinent part: "While in the hospital, John Doe Orderly #1 would regularly tell Plaintiff that he had to take the pills prescribed by Dr. Mark A. Schear. Plaintiff was not given the option to refuse to take the medication, and he was forced to take it." 6th AC ¶ 23. Even liberally construed, Plaintiff has not alleged that Thomas involuntarily committed him, or that Thomas was deliberately indifferent to his medical needs. Rather, liberally construing *pro se* Plaintiff's complaint, Plaintiff has alleged a Section 1983 due process claim against Thomas for forced medication, the gravamen of which is that when Thomas allegedly told Plaintiff that Plaintiff "had" to take his medication, he caused Plaintiff to take psychoactive medication against his will though threats and intimidation. For the reasons that follow, Plaintiff has inadequately pleaded that claim.

##### 2. Discussion

The Court assumes familiarity with the legal standard for the substantive due process claim of forced medication as articulated in *Mejia II*. 2018 WL 3442977, at *4-10.[9] At the time of *Mejia II*,

---

[9] As a municipal corporation, HHC and its employees are state actors for purposes of the Court's Section 1983 analysis. *Id.* at *8

Defendant Thomas had not yet been named as a defendant. Accordingly, the Court did not consider the alleged claim against him. The issue now before the Court is whether Thomas's alleged statements to Plaintiff rise to the level of a due process violation.

Plaintiff contends that Thomas's statements were threats, which ultimately caused Plaintiff to take medication against his will. However, Thomas's alleged conduct does not rise to the level of "shocking the conscience" as required to adequately plead a substantive due process claim. *Id.*

Physical contact is not required for an allegation of forced medication to constitute a due process violation. *Roland v. McMonagle*, No. 12-cv-6331-JPO, 2015 WL 5918179, at *4 (S.D.N.Y. Oct. 9, 2015) ("The Fourteenth Amendment prohibits prison officers from using the threat of violence to compel an inmate to ingest a drug, particularly where no medical professional has authorized forced medication."). In light of the strong liberty interest in deciding whether to take medication, forcing a person to take medication through threats and intimidation, even absent any physical contact, may constitute a due process violation if the circumstances "shock[] the conscience." *Mejia II*, 2018 WL 3442977, at *8 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)); *see Roland*, 2015 WL 5918179, at *2.

Even liberally construed and accepted as true, Plaintiff's allegations do not rise to that level. Plaintiff merely alleges that Thomas, a hospital orderly, told Plaintiff that he had to take the medication his doctor had prescribed. Plaintiff does not allege that Thomas threatened Plaintiff in order to compel him to take the medication prescribed by Dr. Schear, nor even that Thomas had any reason to know that Plaintiff objected to taking his prescribed medication. Standing alone, Thomas's alleged statement is facially neutral. He merely informed Plaintiff that he "had to take the medication"—which is not, in and of itself, a threat.

Plaintiff acknowledges this issue, but contends that in the context of the harrowing circumstances alleged, Thomas's words had "a much more forceful impact [on Plaintiff] than had

they been spoken under other less traumatic circumstances." Opp. to HHC Mot. at 5. However, Plaintiff has not alleged that Thomas was aware of, or reasonably should have been aware of, the context that amplified his words' coercive force. Indeed, Plaintiff has not even alleged that Thomas had any reason to believe that Plaintiff objected to taking his medication. *See* 14 N.Y.C.R.R. § 527.8(c)(1) ("Patients *who object* to any proposed medical treatment or procedure . . . may not be treated over their objection except as follows") (emphasis added). And while Plaintiff has alleged, in detail, the circumstances in which he was physically forced to take medication, he has not alleged that Thomas was present during, or otherwise aware of, those events. *See* 6th AC ¶¶ 17-29. Nor has Plaintiff alleged that Thomas was, or reasonably should have been, aware that Plaintiff was involuntarily committed.

In sum, accepting the pleaded allegations against Thomas as true, Thomas's statement that Plaintiff "had" to take his medication is not, in and of itself, a due process violation. Absent any allegation that Thomas threatened Plaintiff to cause him to take his medication, physically forced Plaintiff to take his medication, or knew, or reasonably should have known, of the circumstances that granted his statement additional coercive force, Plaintiff's Section 1983 claim against Thomas is not actionable. Accordingly, that claim is dismissed.

In *Mejia II*, the Court dismissed all state law claims against HHC and Dr. Schear due to Plaintiff's failure to plead compliance with § 7401 of the New York Unconsolidated Laws which sets forth mandatory notice requirements applicable in cases such as this one. *See Mejia II*, 2018 WL 3442977, at *14-15. Plaintiff has not remedied that issue in the 6th AC. Accordingly, for the same reasons articulated in *Mejia II*, Plaintiff's state law claims against Thomas are dismissed.

### B) Claims against Nurses Li, Pierre, and Castro[10]

#### 1. Background

The 6th AC can be construed to allege that the HHC nurses violated Plaintiff's due process rights by forcibly medicating him with Risperdal, and possibly other medications, and for wrongfully holding him in involuntary commitment. The 6th AC alleges that John Doe Nurse #1 held down Plaintiff, so that he could be forcibly injected with the medication. 6th AC ¶ 21. Plaintiff also claims that "a nurse forcibly inserted a needle into Plaintiff's arm and . . . injected Risperdal, a medication into Plaintiff's body over Plaintiff's objection." *Id.* He also alleges that "every time he passed by the attending nurse's station, he asked to be released. That request was denied." *Id.* at ¶ 22. Finally, he alleges that "John Doe Nurse #5" would tell Plaintiff that if he did not take the pills she would report it to her supervisor and the supervisor would send the Male and Female Nurses to return and physically force Plaintiff to take the pills." *Id.* at ¶ 23. These statements represent the full extent of Plaintiff's allegations regarding any nurse.

While the 6th AC added Li, Pierre, and Castro (the "Nurse Defendants") to the caption of the 6th AC, the body of the 6th AC remains identical to Plaintiff's previous complaints. Notably, the 6th AC does not specify which Nurse Defendant is alleged to have taken which alleged bad act. Instead, the 6th AC refers to actions taken by John Doe Nurses #1 and #5. Accordingly, the 6th AC remains unclear as to the alleged conduct ascribed to each of the Defendant Nurses.[11]

---

[10] Castro is not an employee of HHC, but rather is a subcontractor who is employed by Gotham Companies, Inc. Br., Dkt. No. 213 at 10. Because of the pleading deficiencies pertaining to the Nurse Defendants, the Court need not decide whether Castro is a "state actor" under Section 1983.

[11] Adding to the confusion, the body of the complaint alleges misconduct by Nurse #1 and Nurse #5, but does not allege any facts pertaining to Nurses #2-4.

2. Discussion

The 6th AC does not satisfy the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure because it fails to provide the Nurse Defendants with adequate notice of the claims against them. Accordingly, for the reasons that follow, those claims are dismissed.

Rule 8(a)(2) requires that, in order to state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft*, 556 U.S. at 677-78; *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988). One function of Rule 8(a)(2) is to give defendants "'fair notice of what the plaintiff's claim is and the grounds upon which it rests' in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case." *Middleton v. U.S.*, 10-cv-6057-JFB-ETB, 2012 WL 394559, at *2 (E.D.N.Y. Feb. 7, 2012) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). "In order to maintain [his] claims pursuant to Section 1983, [P]laintiff must identify individual state actor defendants whom [he] believes to be responsible for the alleged deprivation of [his] rights and identify how each of these individuals' actions or omissions caused the alleged deprivation." *Joseph v. Nassau County Correctional Facility*, 15-cv-7010-JFB-ARL, 2016 WL 3033725, at *3 (E.D.N.Y. May 26, 2016) (quoting *Morris v. NYC HRA*, 13-cv-1845-RRM-MDG, 2013 WL 3148664, at *4 (E.D.N.Y. June 19, 2013); *see Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981) ("It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.") (quotation marks omitted).

Here, Plaintiff fails to plead facts in his 6th AC sufficient to establish the specific personal involvement by any of the Defendant Nurses in the alleged wrongful acts. The Court's October 18, 2018 order granted Plaintiff leave to "make the modifications warranted by the addition of those [newly identified] parties." Dkt. No. 152. Plaintiff failed to make the necessary modifications to the

body of the 6th AC, and instead, added the names of the identified parties only to the caption of the 6th AC. Plaintiff did not replace the references to John Doe Nurses in the body of the complaint, nor did he remove the five John Doe Nurses from the caption. Still, liberally construed, the Court understands that Plaintiff has alleged that three of the five John Doe Nurses were Castro, Li, and Pierre.

However, even liberally construed, the 6th AC does not adequately provide the Nurse Defendants with notice of the claims against them. The 6th AC is devoid of any physical descriptors, or other information from which each Nurse Defendant could determine whether Plaintiff alleged them to be any particular John Doe Nurse. This problem is worsened by the fact that there are three Nurse Defendants, but only two John Doe Nurses (#1 and #5) against whom specific allegations are made.[12] Accordingly, at least one of the Defendant Nurses is neither John Doe Nurse #1 nor John Doe Nurse #5. As no allegations against John Doe Nurses #2-4 are specified in the 6th AC, it follows that Plaintiff has not alleged any claims against at least one of the Nurse Defendants. However, the 6th AC does not contain sufficient detail from which to infer which claims are as to which Nurse Defendant. As a result, the 6th AC fails to put the Nurse Defendants on notice of "what the plaintiff's claim [against them] is and the grounds upon which it rests." *Middleton*, 2012 WL 394559, at *2. Accordingly, Plaintiff's claims against the Nurse Defendants are dismissed as inadequately pleaded.[13]

---

[12] The Court does not understand that the references to actions taken by "nurses" are made in reference to the John Doe Nurses. Throughout the 6th AC, Plaintiff consistently uses full uppercase to identify Defendants, and consistently uses the John Doe convention to refer to Defendants who had not been identified as of the time of the 4th AC. Accordingly, even liberally construed, the word "nurses" is not interpreted to refer to Defendants.

[13] As all claims against Castro have been dismissed on other grounds, the Court need not reach her contentions that (1) as a subcontractor she is not a state actor for the purposes of § 1983 and (2) that the statute of limitations has run as to any claim against her. In the event that the statute of limitations issue becomes pertinent at a later point, the Court notes that the Court has not been presented with adequate information to determine whether Plaintiff was entitled to equitable tolling. And as to the claim that Castro's subcontractor status prevents her from being a state actor, Castro's status as a subcontractor is not pleaded in the 6th AC, and Castro has not provided the Court with any justification for considering that information during the motion to dismiss phase.

15

As an alternative to dismissal, Plaintiff requests early discovery in order to ascertain which Nurse Defendant was responsible for which alleged bad act. For the reasons that follow, that request is denied.

New York Public Health Law § 18 states that, "a health care provider shall provide an opportunity, within ten days, for [a patient] to inspect any patient information concerning or relating to the examination or treatment of such subject in the possession of such health care provider." § 18(2)(a). Accordingly, Plaintiff has had the ability to access his medical records from the date this case commenced, if not earlier. *See*, *Kearse v. Lincoln Hosp.*, No. 07-cv-4730-PAC-JCF, 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009) (dismissing claim against John Doe doctor because Plaintiff had both time and access to his own medical records to identify the physician who treated him). Plaintiff has not indicated that he has acquired those records, much less that they are insufficient to provide the information he requires. Furthermore, the Court anticipates that once motion to dismiss practice has concluded, this case will proceed to the discovery phase. During discovery, Plaintiff may request information as to the Defendant Nurses, if necessary, and may move to further amend his Complaint on the basis of that information, subject to any limitation on any such amendments imposed by the Court. For all these reasons, the Court declines to grant Plaintiff the requested early discovery.

VI. **Leave to Amend**

For the reasons that follow, the Court dismisses Plaintiff's claims against NYPH and its employees Robinson and Velez, as well as his *Monell* and state law claims against HHC, with prejudice and without leave to amend. Also, for the reasons that follow, Plaintiff's claims against the Nurse Defendants and Thomas are dismissed without prejudice and with leave to amend.

"Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile."

16

*Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). "Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 62 (2d Cir. 2016) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 132 (2d Cir. 1993)).

As discussed above, Plaintiff's 6th AC did not alter the Court's prior rulings as to his claims against NYPH, Robinson, Velez, and HHC. Indeed, despite serving the 5th AC and 6th AC, Plaintiff has not amended his complaint to contain any information pertinent to NYPH, Robinson, Velez, or HHC that was not considered in the Court's prior opinions. Given Plaintiff's failure to address the issues raised in the Court's prior opinions, and his failure to oppose several of the pending motions, the Court determines that granting Plaintiff further leave to amend his complaint as to his claims against NYPH, Robinson, and Velez, as well as his *Monell* and state law claims against HHC is "unlikely to be productive." *Id.* Accordingly, all of Plaintiff's claims against NYPH, Robinson, and Velez, as well as his *Monell* and state law claims against HHC, are dismissed with prejudice and without leave to amend.

The adequacy of Plaintiffs claims against Thomas and the Defendant Nurses were considered by the Court for the first time in this opinion. In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, Plaintiff's claims against Thomas and the Defendant Nurses are dismissed without prejudice and with leave to replead.

VII. Conclusion

For the reasons stated above, the Defendants' motions to dismiss are GRANTED. Plaintiff's claims against NYPH, Robinson, and Velez are DISMISSED with prejudice and without leave to replead.

Plaintiff's *Monell* and state law claims against HHC are dismissed with prejudice and without leave to replead. Any residual federal claims asserted by Plaintiff against HHC survive.

Plaintiff's claims against Thomas, Castro, Li, and Pierre are DISMISSED without prejudice and with leave to replead.

The Court will set a schedule for service of any amended complaint during a conference to be scheduled by subsequent order. Plaintiff is not granted leave to serve an amended complaint in the interim.

The Court requests that counsel for Defendant HHC provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 159, 183, and 211, and to mail a copy of this order to Plaintiff by certified mail and by regular, first class mail.

SO ORDERED.

Dated: July 28, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge