USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/19/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAMON MEJIA,

Plaintiff,

-v-

N.Y.P.D., et al.,

Defendants.

16-cv-9706 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

The complaint in this case was filed on December 15, 2016 by Ramon Mejia ("Plaintiff"). Dkt. No. 2. After a series of motions to dismiss, the case is now proceeding on the sixth amended complaint, filed on October 29, 2018. Dkt. No. 154. That complaint alleges that on September 15, 2015, a social worker from Columbia Presbyterian Hospital visited Plaintiff's home along with another individual; after a short time, Plaintiff asked them to leave. *Id.* ¶¶ 3–4. Shortly thereafter, officers from the New York Police Department arrived, forcibly entered Plaintiff's home after he refused them entry, and brought him against his will to North Central Bronx Hospital, where he was taken to the Psychiatric Unit and held there. *Id.* ¶¶ 6–16. Plaintiff was forcibly hospitalized for six days, during which time he was injected with and forced to take medications against his will. *Id.* ¶¶ 20–23. Defendants' answers include the defenses that Plaintiff's confinement was legally justified and that Plaintiff's alleged injuries are attributable not to his confinement but to his existing medical conditions. Dkt. Nos. 234, 235.

**BACKGROUND**

Throughout this case, Plaintiff has failed to comply with his discovery obligations.

The Court scheduled a status conference for August 14, 2019 after motions to dismiss parts of the sixth amended complaint were granted. Counsel for defendants appeared at that conference, but Plaintiff did not. Accordingly, the Court scheduled a new status conference for August 26, 2019. Dkt. No. 226. At the August 26 conference, the Court set a deadline of September 30, 2019 for Plaintiff to file a seventh amended complaint, Dkt. No. 229; after requesting and receiving an extension of that deadline, Dkt. No. 237, Plaintiff elected not to further amend his complaint to supplement the dismissed claims, Dkt. No. 240.

As it stands, there are two sets of defendants in this case, represented by two sets of counsel: (1) defendants City of New York and various named police officers (the "City Defendants"), and (2) defendants Mark Sher and New York City Health and Hospitals Corporation (the "HHC Defendants," and, together with the City Defendants, "Defendants").

The procedural history of this case is lengthy and involves repeated instances of Plaintiff's failure to comply with his initial discovery obligations and the Court's orders and the Court's numerous efforts to give him opportunities to comply.

The history begins on or about December 17, 2019, after Plaintiff elected not to further amend his complaint. The Court held a status conference and entered a case management plan ordering that initial disclosures be completed by January 17, 2020; initial requests for documents as well as Rule 33(a) interrogatories be served by February 7, 2020; and all fact discovery be completed by June 17, 2020. Dkt. No. 246. The first problems occurred shortly thereafter, on January 8, 2020, when Plaintiff wrote to the Court indicating a potential problem with responding to Defendants' initial disclosures, Dkt. No. 248; the Court scheduled a conference to discuss the letter on January 24, 2020, but Plaintiff did not appear, Dkt. No. 250.

The Court scheduled a new conference for January 31, 2020, at which both Plaintiff and Defendants appeared. At the conference, Defendants raised with the Court Plaintiff's failure to provide Defendants with requested HIPAA medical releases, which Defendants needed to defend against Plaintiff's claims that his forced hospitalization was unjustified and that his injuries were attributable to his confinement rather than to preexisting medical conditions. Counsel for the HHC Defendants indicated that "we prepared HIPAA-compliant authorizations which were mailed to [Plaintiff] in late December." *Id.* at 22. The Court confirmed that these were mailed to the correct address, *id.* at 23, and extended the deadlines for Plaintiff to provide HIPAA releases and initial disclosures to three weeks from the date of the conference and extended the deadlines for production of documents and special interrogatories as well. During the conference, Plaintiff stated that the conditions of his living facility made it difficult for him to comply with the discovery obligations. The Court offered Plaintiff: "What I could do, if it would be helpful, is I could issue an order to you requiring you to comply with the discovery obligations," which the Court offered it could "even formulate . . . as a notice," which "will give you a piece of paper to show people that you are obligated to comply with the obligations." Dkt. No. 255 at 11–12. The Court also warned Plaintiff that "[a] consideration with respect to that is that because I'd be ordering you to do it, if you didn't do it, then you'd potentially be in violation of my order." *Id.*

The Court issued a revised case management plan reflecting the extended deadlines following that conference. Dkt. No. 251. The case management plan ordered that initial disclosures be completed by February 21, 2020 and initial requests for documents as well as Rule 33(a) interrogatories be served by February 28, 2020. The Court also issued the notice discussed at the conference reiterating that, "[a]s stated on the record during the January 31, 2020

conference, Plaintiff is obligated to comply with the deadlines set forth in the attached Revised Case Management Plan." Dkt. No. 252.[1]

Several months later, on April 27, 2021, counsel for the HHC Defendants filed a letter jointly with counsel for the City Defendants. The letter reported: "To date, defendants have served HIPAA authorizations for Mr. Mejia to execute and return to us. Defendants have served Initial Disclosures pursuant to FRCP 26. Defendants have also served interrogatories and requests for production of documents in accordance with the Court's Case Management Order. Unfortunately, Mr. Mejia has not provided his Initial Disclosures, nor has he responded to any of the defendant' [sic] discovery requests and demands." Dkt. No. 256 at 2. The letter requested an extension of various discovery deadlines because of the delay; it also requested "the Court [to] remind Mr. Mejia of his discovery obligations in accordance with the Courts' [sic] previous Orders and . . . warn him that failure to comply with these obligations may result in dismissal of this action for failure to prosecute." *Id.* at 4.

Counsel submitted a second letter to the same effect on May 5, 2020. Dkt. No. 257.

The Court scheduled a status conference for June 9, 2020, to discuss the April 27 and May 5 letters, "including how to complete discovery and whether, if discovery cannot be completed, this case should be dismissed." Dkt. No. 258. At the conference, the Court heard from Plaintiff about why he was having trouble complying with his discovery obligations. The Court ordered Plaintiff to let Defendants know, as soon as possible, where he would be located so that Defendants could mail him the completed HIPAA forms requiring his signature along with return envelopes. Dkt. No. 262 at 14–15. The Court also directed Defendants to resend a

---

[1] After this conference, on February 4, 2020, this case was reassigned from Judge Woods to Judge Liman. All further proceedings took place before Judge Liman.

copy of their document requests and interrogatories along with the HIPAA forms and gave Plaintiff two weeks from receipt to return the signed HIPAA forms and respond to the document requests and interrogatories. *Id.* at 17. The Court also provided Plaintiff with the telephone number for the New York Legal Assistance Group ("NYLAG"), if he required assistance in complying with the discovery requests. *Id.* at 23.

Following that conference, the Court issued an order reiterating the amended discovery schedule:

- Defendants shall mail to Plaintiff (i) HIPAA forms identifying medical providers, (ii) requests for documents, and (iii) interrogatories, along with instructions and self-addressed and self-stamped envelopes, by June 30, 2020;
- Plaintiff shall complete the HIPAA forms, requests for documents, and interrogatories and mail these documents two weeks from the day that he receives these forms;
- Fact discovery shall be completed by September 23, 2020;
- Expert discovery shall be completed by November 25, 2020.

Dkt. No. 261. The Court scheduled a status conference for December 4, 2020. *Id.*

On July 17, 2020, counsel for the City Defendants filed a letter with the Court on behalf of Plaintiff, indicating that he "requires an extension to July 31, 2020 to respond"; the Court granted this request and the accompanying requests for adjustments to the other discovery deadlines and adjourned the status conference to January 15, 2021. Dkt. No. 265.

By October 2020, months later, the HIPAA forms still had not been delivered. On October 1, 2020, Defendants jointly submitted a letter indicating that "[t]o date, defendants have not received any discovery." Dkt. No. 266. At that point, after almost a year had passed since Plaintiff had first failed to produce the signed HIPAA forms, and after giving Plaintiff warnings that his failure to comply might lead to dismissal, the Court indicated that "Defendants may make a formal motion to dismiss for failure to prosecute." Dkt. No. 267. On November 18, 2020, Defendants jointly submitted another letter stating that they had still not received "any

responses to defendants' interrogatories and document requests" and that "while plaintiff has now provided signed HIPAA release forms for some of his medical providers, . . . plaintiff has not provided defendants with all of his relevant medical providers" and requesting that "the Court schedule a telephone discovery status conference . . . to address the outstanding discovery in this matter, plaintiff's repeated failure to prosecute the case, and how to best proceed at this juncture." Dkt No. 269.

The Court scheduled the requested conference for December 14, 2020. Dkt. No. 269. At the conference, the Court told that Plaintiff that he would have "one last chance to respond to the interrogatories." The Court told Plaintiff that he could "set a deadline for [himself] as to when [he is] going to respond to the interrogatories," and that he would have "one last chance to respond to the request for releases and authorizations." Dkt. No. 273 at 19. The Court further cautioned Plaintiff that "I want what I'm saying to be very clear to you. If you do not respond by the deadline that you have set, I will dismiss this case for failure to prosecute." *Id.* The Court asked Plaintiff to confirm that he understood, and Plaintiff responded "Yes, I understand." *Id.* at 20. The Court indicated that Plaintiff's difficult circumstances were taken into account and accordingly that Plaintiff would be given "a choice as to when [he] will respond to the discovery." *Id.* at 21. The Court asked Defendants to articulate clearly on the record what medical releases they still needed, which they did. *Id.* at 22–23, 28–29. Defense counsel for the City Defendants offered that he could "mail out another copy of defendants' interrogatories and document requests, as well as another copy of all of the HIPAA releases that I am requesting" and confirmed the best address to send those to for Plaintiff. *Id.* at 25–26. Plaintiff requested that he have two months to respond to those requests, and the Court accordingly set a deadline of February 26, 2021. *Id.* at 26. The Court also directed counsel for the HHC Defendants to "send

copies of those materials again by certified mail by this Wednesday [December 16, 2020] to the plaintiff at the address that he has given us." *Id.* at 27. The Court then explained to Plaintiff in detail what he had to do in order to comply with his discovery obligations:

| | |
|---|---|
| THE COURT: | One thing that's very important for you to understand is that you will need to sign and return both the forms sent by [counsel for HHC Defendants] and the forms sent by [counsel for City Defendants]. They each represent separate parties whom you have sued. It is not enough for you to sign one set of forms. You will need to sign both sets of forms. Do you understand that? |
| PLAINTIFF: | Yes. |
| THE COURT: | Okay. Second thing for you to understand is that you will be getting document requests from [counsel for HHC Defendants] and interrogatories from [counsel for HHC Defendants]. You will also have document requests from [counsel for City Defendants] and interrogatories from [counsel for City Defendants]. Interrogatories will ask you to answer certain questions. You will fill out the answers to those questions, unless you've got an objection, and you will send back the answers to [counsel for City Defendants], if they are [counsel for City Defendants'] questions, and to [counsel for HHC Defendants], if they are [counsel for HHC Defendants'] questions. Do you understand that? |
| PLAINTIFF: | Yes. |
| THE COURT: | Interrogatories is just a fancy name for questions. Do you understand that? |
| PLAINTIFF: | Yeah. Okay. |
| THE COURT: | Now, with respect to the document requests, the document requests are going to ask you to collect the documents you've got in your possession that are responsive to the request. You should search what you have in your records to see what is responsive. Do you understand that? |
| PLAINTIFF: | Yes. |
| THE COURT: | And that's what you're supposed to return to [counsel for City Defendants], if the documents are responsive to her requests, and [counsel for HHC Defendants], if they're response to his request. Do you understand? |
| PLAINTIFF: | Yes. |

*Id.* at 32–33. The Court also addressed an issue raised by counsel for the HHC Defendants regarding Plaintiff's failure to initial section 9(a) on the HIPAA releases Plaintiff had provided and explained to Plaintiff what he needed to do to comply with that requirement. *Id.* at 41. The

Court articulated clearly that Plaintiff had to respond by the deadline he had chosen, or the case would be dismissed for failure to prosecute:

| | |
|---|---|
| THE COURT: | I want my order to be very clear to you. |
| PLAINTIFF: | Yes. |
| THE COURT: | You are to respond to all of these requests by February 26th. Do you understand that? |
| PLAINTIFF: | Yes. |
| THE COURT: | And do you understand that if you do not do that, I will dismiss your case for failure to prosecute? |
| PLAINTIFF: | Yes, I understand what you're saying. |
| THE COURT: | That is the order of the Court. You understand that? |
| PLAINTIFF: | Yes. |

*Id.* at 35–36. The Court reiterated this at the end of the conference, telling Plaintiff: "I would like to move this case forward. You've made serious charges. If you've got a case, I would like to put you in a position where you can get relief. . . . If there's no basis for relief, I'd like to move it forward so that the defendants can know that there is no basis for relief. And if you do not respond to the requests, as I've said before, I will have to dismiss the case for failure to prosecute." *Id.* at 42.

Following the conference, the Court issued an Order dated December 16, 2020 reiterating that Plaintiff would have "one last chance to respond to the interrogatories, document requests, and requests for HIPAA releases," that Defendants were ordered to re-mail the various forms to Plaintiff by December 16, 2020, and that Plaintiff was informed at the conference "that if he does not complete these forms, the Court is prepared to dismiss his case for failure to prosecute." Dkt. No. 270. The Order stated that "[i]f Plaintiff needs an extension of this deadline, he shall mail a letter to the Court by February 19, 2021 that sets forth good cause for such an extension." *Id.* Counsel for both the City Defendants and the HHC Defendants filed proof of compliance with the Order to re-mail the forms. Dkt. Nos. 271, 272.

On February 18, 2021, Plaintiff, in accordance with the Court's Order, filed a letter indicating that he received documents from counsel for the City Defendants, which he "completed, sign [sic] and mailed out," but that due to mail delivery issues, he did not receive the documents from counsel for the HHC Defendants until February 18, 2021; the Court granted Plaintiff an extension of time, and directed him to complete, sign, and mail those documents by April 12, 2021. Dkt. No. 276.

The Court held a status conference on April 23, 2021.[2] At that conference, counsel for both the City Defendants and the HHC Defendants stated that they had received only partial responses from Plaintiff. Specifically, they stated that Plaintiff still had failed to provide HIPAA forms with section 9(a) initialed and still had failed to provide HIPAA releases with authorizations for some of the relevant doctors, pharmacies, and hospitals. Counsel for both the City Defendants and the HHC Defendants requested that the Court dismiss the case for failure to prosecute. The Court stated that Defendants should make that request by letter motion, attaching the relevant documents. The Court gave Plaintiff over a month to respond to the letter motion and explained to Plaintiff that this would give him a further opportunity to comply with the outstanding discovery requests, which would influence how the Court decided the motion to dismiss.

Pursuant to the Court's Order at the April 23, 2021 conference, both the City Defendants and the HHC Defendants filed motions to dismiss for failure to prosecute on April 28, 2021.

[2] In the interim, in March and April, Plaintiff sent various letters to the Court regarding requests for subpoenas; the Court directed him to seek a subpoena from the Clerk of Court's office in accordance with Rule 45 and again provided the contact information for NYLAG if Plaintiff required legal advice or assistance. Dkt. No. 279.

Dkt. Nos. 281, 282. At that time, Plaintiff still had not provided his initial disclosures, produced any documents in response to the document requests, or properly filled out the HIPAA releases.

The motion to dismiss filed by the HHC Defendants on April 28, 2021 sets out the procedural history detailed above and states that Plaintiff's response to the discovery requests, which is attached to the motion as Exhibit G, suffers from the following deficiencies:

- "[P]laintiff has still not provided his initial FRCP 26 disclosure."
- "[W]hile Mr. Mejia provide the pre-printed HIPAA releases filled out by defendants, he did not provide any additional HIPAA releases for providers he himself identified during the December 14, 2020 conference. During that conference, Mr. Mejia discussed seeing a psychologist named Dr. Callon, yet despite being ordered to provide a release for this physician, he failed to do so. Moreover, Mr. Mejia discussed being seen by mental health providers previously to his treatment at North Central Bronx Hospital in 2015. In his interrogatory responses and responses to requests for production of documents, Mr. Mejia makes reference to treatment at New York Hospital, Montefiore Hospital, Promenade Nursing Home, and by Dr. Pong. He also makes reference to filling prescriptions at Walgreens Pharmacy and treating with a podiatrist. Yet despite being provided with over 30 blank authorizations in December 2019, June 2020, December 2020 and February 2021, Mr. Mejia did not provide authorizations for any of these providers. Mr. Mejia was specifically instructed by the Court during the December 14, 2020 conference to provide authorizations for doctors, podiatrists, hospitals, clinic, pharmacies, and mental health providers. Defendants' multiple letters reiterated the need to provide authorizations for these categories of providers; nevertheless, Mr. Mejia has failed to provide them."
- "[T]hose authorizations that Mr. Mejia did provide are wholly deficient as Mr. Mejia did not initial all three sections of 9(a) on those HIPAA releases. This was specifically addressed during the December 14, 2020 conference with defendants and Your Honor explaining in great detail to Mr. Mejia that providers will not process and honor the releases without those sections being initialed. Thus, the authorizations that Mr. Mejia has provided will not result in defendants securing the necessary medical records to defend this action."
- "Mr. Mejia has finally provided responses to Defendants [sic] interrogatories and requests for production of documents after more than a year. The responses are difficult to read and are at points incomprehensible. However, the greatest omission from Mr. Mejia's responses to defendants' request for production of documents are the documents themselves. Mr. Mejia has not produced a single document other than the HIPAA releases which were completed for him by defendants. Mr. Mejia has made mention for nearly 17 months of documents and records in his possession in a storage facility or at times at his nursing home in the Bronx, yet he has not produced any of these documents."

Dkt. No. 281 at 6. The motion contains exhibits including the HIPAA releases and accompanying letter sent to Plaintiff by counsel for the HHC Defendants on December 31, 2019, Dkt. No. 281-1, Ex. A; the HHC Defendants' Initial Rule 26(a) Disclosures, along with an affidavit of service on January 17, 2020, Dkt. No. 281-2, Ex. B; the HHC Defendants' Initial Requests for Interrogatories & Request for Production of Documents, along with an affidavit of service on February 27, 2020, Dkt. No. 281-3, Ex. C; a letter sent to Plaintiff on June 25, 2020, along with a stamped and addressed return envelope, a transcript from the June 9, 2020 conference, a copy of the June 9, 2020 Order, and the authorizations, Initial Disclosures, and Initial Requests, Dkt. No. 281-4, Ex. D; a transcript of the December 14, 2020 conference, Dkt. No. 281-5, Ex. E; a letter dated February 10, 2021, indicating that counsel mailed the enclosed letter, dated December 15, 2020, and a package of discovery materials, but was informed that Plaintiff never received the materials and is therefore re-sending them, along with a stamped and addressed return envelope and all the relevant discovery documents including the authorizations and Initial Requests, Dkt. No. 281-6, Ex. F; and Plaintiff's response to those requests, including responses to the requests for production (but no actual documents), some of which say things like "[a]ll these documents will be disseminated to all concerned as soon as they are made available," or "that's exactly what I will do, as soon as I get my hands on all those documents. I will make [illegible] to introduce at trial and you will get a copy of it," eighteen HIPAA forms, some of which have Plaintiff's initials in section 9(a) but none of which have section 9(a) fully filled out, and responses to the interrogatories. Dkt. No. 281-7, Ex. G.

The motion to dismiss filed by the City Defendants also sets out the procedural history of the case. The motion focuses on the contention that that Plaintiff's response to their various discovery demands, which was received on February 18, 2021, is deficient in that Plaintiff

"completely failed to initial any of the three sub-sections in section 9(a) of his HIPAA release forms, regarding mental health, drug and alcohol use, and HIV status, for: 1) Massachusetts General Hospital; 2) Rockefeller University Hospital; 3) Lenox Hill Hospital; 4) Plaza Rehabilitation Center; 5) Charles Wang Community Clinic; and 6) New York City Human Resources Administration Department of Social Services" and "only initialed the mental health section in three of the remaining HIPAA forms, still leaving the other two 9(a) subsections blank, for: 1) N.Y.U. Langone Health; 2) N.Y. Presbyterian; and 3) North Central Bronx Hospital." Dkt. No. 282 at 4. The motion includes the forms provided by Plaintiff, which, as Defendants indicate, are all missing initials in various places in section 9(a). Dkt. No. 282-2, Ex. B.

Plaintiff submitted a response to these motions, pursuant to the Court's Order at the April 23, 2021 conference, on June 1, 2021. His letter details "the difficulties [he] had to endure while at the same time trying to comply with the court and all of its orders" and indicates that "there was absolutely no intent on [his] part to delay or not comply with [the Court's] orders." Dkt. No. 283 at 5. His letter does not dispute or otherwise respond to the deficiencies raised in the motions to dismiss, nor does it outline any additional efforts taken by Plaintiff since those motions were filed to remedy those deficiencies.

**DISCUSSION**

Federal Rule of Civil Procedure 41 provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed R. Civ. P. 41(b); *see also Edwards v. Horn*, 2012 WL 1292672, at *1 (S.D.N.Y. Apr. 13, 2012), *report and recommendation adopted*, 2012 WL 1592196 (S.D.N.Y. May 4, 2012) (stating that this rule "permits the Court to dismiss an action *sua sponte* for failure to prosecute . . . or failure to comply with an order of the Court"); *LeSane v. Hall's Sec. Analyst*,

*Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) ("[I]t is unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute."). "Dismissal for lack of prosecution or for failure to comply with an order of the court is a matter committed to the discretion of the district court." *Caussade v. United States*, 293 F.R.D. 625, 629 (S.D.N.Y. 2013) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962)).

In this Circuit, a court "assess[es] the dismissal in light of the record as a whole" and considers five factors when determining whether dismissal for to comply with a court order is appropriate: "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] . . . the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] . . . the efficacy of lesser sanctions." *Jackson v. City of New York*, 22 F.3d 71, 74 (2d Cir. 1994) (internal alteration omitted) (quoting *Alvarez v. Simmons Mkt. Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988)); *see also Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009) (utilizing the same factors for consideration whether to dismiss for failure to prosecute: whether "(1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions" (internal quotation marks omitted) (quoting *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004))).

Dismissal of this case for failure to comply with a court order is appropriate under these factors. The original deadlines for initial disclosures, production of documents, and the return of

Plaintiff's HIPAA forms were in February of 2020. After Plaintiff failed to comply with these deadlines, the Court ordered him, at the conference on June 9, 2020, to respond within two weeks of receipt of materials from Defendants. After Plaintiff again failed to do so, the Court ordered him, at the conference on December 14, 2020, to respond by February 26, 2021, a deadline chosen by the Plaintiff, and it reiterated this order at Dkt. No. 270. It is now November of 2021, over twenty months since the initial deadlines and nine months since the Court's Order at Dkt. No. 270. "There is no fixed period of time that must elapse before a plaintiff's failure to prosecute becomes substantial enough to warrant dismissal," *Caussade*, 293 F.R.D. at 629 (citation omitted), but "[d]elays of several months" have been found sufficient. *Id*. (collecting cases). Plaintiff was given repeated notice that failure to comply with his discovery obligations, and in particular to return the fully signed HIPAA releases, would result in dismissal for failure to prosecute.

"Prejudice to defendants resulting from unreasonable delay may be presumed." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982). In this case, furthermore, Plaintiff's defaults did not relate to insignificant documents and materials. They related to HIPAA forms that were needed for the Defendants to obtain some of the most important and relevant information in the case. Without those forms, the case cannot move forward, and Defendants would have no means to test Plaintiff's claims and, if the claims fail the test, to clear their names.

Moreover, there is no indication from the record that Plaintiff will ever be able to comply with his discovery obligations; requiring Defendants to defend in this action without the discovery that they are entitled to would cause prejudice to Defendants.

Finally, the Court has "already given [Plaintiff] an opportunity to proceed with this action

so that it would be decided on the merits," and Plaintiff's repeated failure to comply with his discovery obligations and court orders despite many extensions, on several occasions to dates that he chose," demonstrate that any lesser sanction would be 'an exercise in futility.'" *Edwards*, 2012 WL 1292672, at *2 (quoting *Koch v. Rodenstock*, 2010 WL 2010892, at *7 (S.D.N.Y. Apr. 23, 2010), *report and recommendation adopted*, 2010 WL 2010900 (S.D.N.Y. May 18, 2010)). Plaintiff was given extensions and warned of the consequences of non-compliance with his discovery obligations, beginning with the Court's Order scheduling the June 9, 2020 conference, at the December 14, 2020 conference, and again at the April 23, 2021 conference. Plaintiff was on notice that this day might come. The Court excused his failures on numerous occasions but warned him that if he continued not to comply, the Court would have no choice but to dismiss his complaint. The Court also gave Plaintiff opportunities to explain why he could not meet deadlines and allowed him to choose the deadlines for himself; he still failed to meet them. The dismissal of his complaint is the consequence of this repeated failure.

For the foregoing reasons, the case is dismissed for failure to comply with court orders. The Clerk of Court is respectfully directed to close the case and terminate all pending motions.

SO ORDERED.

Dated: November 22, 2021
New York, New York

LEWIS J. LIMAN
United States District Judge